Cox v. Roome.

*Decree unanimously affirmed.*

---

Ida Cox et al., appellants,

*v.*

Benjamin Roome, respondent.

1. An executor who deposits money to his credit, in his official capacity, in a bank of good standing, will not be liable for its loss by the failure of such bank.

2. The executor, under the facts of this case, held to be not liable.

On appeal from a decree of the chancellor, whose opinion is reported in *Jacobus* v. *Jacobus, 10 Stew. Eq. 17.*

*Mr. C. G. Garrison,* for appellants.

I. Every person in the position of a trustee who adopts conduct with regard to the trust fund which is irregular and unjustifiable, however innocently, will be charged with any loss resulting to the *cestui que trust* traceable to such irregularity or unwarrantable conduct, however remotely. *Clough* v. *Bond, 3 My. & Cr. 494; Thompson* v. *Eastwood, L. R. (2 H. L.) 215.*

II. This fund descended to the heirs.

The principle is established that where real estate is directed, either by the owner or the order of the law, to be converted into money for a particular object, the proceeds will be regarded in equity as *land,* and will descend as such. *Oberly* v. *Lerch, 3 C. E. Gr. 346, 375.*

It is settled law in New Jersey that the proceeds of lands sold by order of the court in proceedings for partition will pass by succession as real estate. *Oberly* v. *Lerch, 3 C. E. Gr. 375, 380.*

Land converted into money, but thus impressed in equity with the descendible qualities of land, goes through all the limitations of real estate until it vests in a proprietor who, by some unequivocal act, gives it character in the shape in which it exists. *Oberly* v. *Lerch, 3 C. E. Gr. 349, 380; Craig* v. *Leslie, 3 Wheat. 563; Wheldale* v. *Partridge, 8 Ves., Jr., 235; Creuse* v. *Bailey, 3 P. Wms. 20, note; Roper* v. *Radcliff, 9 Mod. 167.*

Which act (indicating election) must be unequivocal and clear. *Rashleigh* v. *Master, 1 Ves., Jr., 201.*

A right to elect not clearly indicated will not affect the estate. *Craig* v. *Leslie, 3 Wheat. 563.*

The burden of proof is on the party who relies upon the election or act of recognition. *Rashleigh* v. *Master, 1 Ves., Jr., 201; Dixon* v. *Gayfere, 17 Beav. 433; Wheldale* v. *Partridge 8 Ves., Jr., 235.*

Nor can it be deduced from mere lapse of time, or from silence, in the absence of circumstances making it a duty to speak. *Kirkman* v. *Mills, 13 Ves. 338 ; Dixon* v. *Gayfere, 17 Beav. 433.*

If the lands, or the proceeds of land, have been separated into parts by the owner or by the decree of the court, and one part only is in possession or is ready to be paid over to a party, an acceptance or any other act indicative of an election will operate solely upon the part in possession or ready to be paid, and will not be attributed to the other part differently circumstanced. *In re Pedder, 5 De G., M. & G. 890 ; Wood* v. *Keyes, 8 Paige 365 ; Meredith* v. *Vick, 23 Beav. 559.*

III. If this fund were personalty, its loss was directly referable to the unjustifiable conduct of respondent in the following particulars :

(*a*) He tied the money up in his own hands by having an order made directing him to pay it to a person whom he knew was dead ; which order was based on his own false affidavit that the party was living.

(*b*) He made no personal effort to correct his mistake or to communicate to the parties thus injured.

(*c*) He first made an oath that Catherine Hedden was living ; he then found out that she was dead. He did not alter his affidavit or inform court or counsel, but took an order to pay to the dead woman.

(*d*) He did not pay the money into court, or apply for instructions.

(*e*) He allowed the money to remain thus locked up, by his own fraud and negligence, for six months and over.

*Mr. Richard Wayne Parker*, for respondent.

The opinion of the court was delivered by

Beasley, C. J.

The appellants are the heirs and administrators of Catherine Hedden, deceased, and the object of their proceedings in the court of chancery was to compel the payment of certain moneys

Cox *v.* Roome.

which had come to his hands as the executor of the last will of Hassel C. Jacobus, deceased.

The fund in controversy had been received by the respondent in this wise: Hassel C. Jacobus had died seized of certain lands which he devised to his six children, of whom Catherine Hedden, the mother of the appellants, was one. The testator charged the lands so devised with the support of John J. Jacobus, a blind relative. Of this will, Benjamin Roome, the respondent, was the executor. After the testator's death, one of his sons, and one of the six devisees, filed his bill for partition of these devised lands, and the lands being sold by virtue of that procedure, the chancellor ordered the sum of $6,000 to be invested at interest, for the support of the before-mentioned annuitant. In the year 1881, this beneficiary died, having outlived Catherine Hedden, mother of the appellants. The respondent, subsequently to these events, having called in the before mentioned $6,000, under an order of the chancellor to that effect, paid the shares of certain of the parties, and deposited the residue of such moneys in the Mechanics National Bank of Newark. This being the state of affairs, the appellants, as heirs-at-law of their mother, applied to the respondent for their share of the fund in question. This application was made on the 15th of September, 1881, and on the 29th of the following October, the before-mentioned national bank suspended payment. The appellants insist that, so far as they are concerned, the executor is responsible to them for the moneys thus lost. The chancellor took the opposite view, and hence the appeal.

At the time the appellants made the claim just mentioned, they had not taken out letters of administration on the estate of their mother, so that, to put the respondent in the wrong, for his omission to pay their quota of the moneys in dispute, they insist that their *status* as heirs gave them the right to such quota. Their argument on this subject is that it is a rule of law that, when real estate is, for a particular object, converted into money by judicial action, the fund so raised will be regarded in equity as land, and, being of that nature, will descend by inheritance. As a corollary, it is further insisted that money thus impressed

with the characteristics of realty will preserve its descendible quality until the proprietor of it, by some unequivocal act, manifests his intent to convert it into personalty, and that, in this case, there had been no indication of such a purpose.

In the court of chancery, the view adopted was that, under the circumstances of the case, the $6,000 in question did not continue to be real estate up to the time of the death of the mother of the appellants, but was then to be regarded as personalty. This, of course, led to a decree against the appellants, for there was no ground on which to lay a claim against the respondent for this quota, except his failure to pay it over on the occasion of their requiring it, in their character of heirs. The executor had put the money in a solvent bank, making such deposit in the name of "Benjamin Roome, estate of Hassel C. Jacobus," and it is plain that such deposit was not at his risk, unless it appeared that he had wrongfully retained it in his hands. The general doctrine, as stated by Judge Story, in the second volume of his Equity Jurisprudence, section 1269, is that a trustee is to keep the trust property as a prudent man keeps his own. "Therefore," he says, "if he should deposit money with a banker in good credit, to remit it to the proper place by a bill, drawn by a person in due credit, and the banker or the drawee of the bill should become bankrupt, he would not be responsible." See, also, *Rowth* v. *Howell, 3 Ves. 565*.

As, therefore, the facts of the deposit of this money in the bank, and its loss, will not, of themselves, create a liability of the respondent, the only inquiry in the. case is, did the respondent incur a responsibility, in that respect, by his failure to make payment to the appellants, when their demand was made upon him. If we assume that this money was to be regarded as realty, or, taking the other view, and looking upon it as personalty, I entirely fail to see how anything that wears even a semblance of wrong-doing can be laid upon this executor in regard to the affair in question. The respondent has stated, in his testimony, the occurrence already referred to, and such statement does not differ, in any material respect, from the version of the interview as narrated by one of the appellants, who is the only

other witness who speaks to the point.    The respondent, stating forth what passed between the appellant and himself, says :

"He asked me for his share of the money, as one of such sons; I told him I was ready to pay it as soon as I could get a voucher that would be acceptable to the chancellor, and he, or some one, should administer on the property; I did not think I could pay until some one adimnistered, and I asked him to attend to it immediately;   *   *   *   he said he would."

And that was the end of the interview.    The appellant proceeded to take out letters of administration, but before he again saw the respondent, the bank had failed.

I think the respondent was quite right in his hesitation about paying over this money to these parties, as heirs-at-law.    Whether they were entitled to it, or whether it was payable to the personal representative of the mother, was a nice question of law, difficult of solution, in view of the decisions in this state, and consequently the executor had a right, before parting with the money, to have, in some legal form, the right of these claimants to it settled.    If he had filed a bill for that purpose, he would probably have been justified, but what he did was to suggest to the appellant the procuring of letters of administration.    To that suggestion the appellant yielded assent, and proceeded to obtain such letters; and out of such a state of facts, as I have said, it seems impossible to construct a misfeasance on the part of this respondent.

I am also instructed by this court to state that, although there is a contrariety of opinion among the judges upon the subject, according to the views of a majority of the members, the ground upon which the case was put in the court below should be sustained, to the effect that, under the circumstances, there was a conversion of the realty, out and out, and that, consequently, the appellants, as heirs-at-law, were not entitled to the fund in question.

The decree should be affirmed.

*Decree unanimously affirmed.*