In the matter of the estate of WILLIAM HEDGES BAKER, deceased.

[Filed January 22d, 1901.]

1. Decrees of an orphans court allowing trustees' accounts which exhibit payments by them out of the trust fund, if of the nature of final accounts, can only be opened by that court on satisfactory proof of fraud or mistake.

2. Such decrees, if not final in their character, are to be taken as *prima facie* correct, and are not to be opened unless error in the proceedings clearly appears.

3. Where the judicial action of the orphans court in settling and allowing the accounts of trustees involves the question of their duty under a will creating the trust, that court may construe the will on the subject of such duty.

4. When an orphans court has made its construction of a will in such respect the basis of a decree allowing the trustees' account, the decree may not be opened by that court, because subsequent judges have a variant view as to the true construction of the will.

5. A will created a trust, and directed the trustees to collect certain mine rents and "after deducting for taxes, repairs, insurance and other necessary expenses, pay over the residue to my said wife, Clarissa, for her comfortable maintenance, and that of my minor children, if necessary for that purpose, and the balance of said residue to my said three sons, share and share alike," &c.—*Held*, that the will contemplated and provided for payments to testator's sons from time to time out of the "balance of the residue" of the mine rents received, and did not impose on the trustees any duty to retain and accumulate the mine rents to provide for the widow's maintenance, in the contingency that the mine rents would cease to be collectible.

*Mr. Albridge C. Smith,* for the appellant.

*Mr. Willard C. Cutler,* for the respondent.

MAGIE, ORDINARY.

In order to make clear the questions presented in this cause the following facts, which appear therein, should be stated:

By the will of William Hedges Baker, of Morris county, dated March 31st, 1873, there were devised to his executors and the survivor and survivors of them, and the heirs and assigns of the survivor, seven tracts of land, upon certain trusts, one of which trusts was expressed as follows:

> "3d. To collect the mine rents due to me or my estate from the lessees now in occupation of said mine premises, part of the homestead and the mine lot above mentioned; to renew the leases thereon if necessary, or execute new leases upon such terms and for such times, not exceeding fifteen years, as they may think best; and after deducting for taxes, repairs and insurance and other necessary expenses, pay over the residue to my said wife, Clarissa, for her comfortable maintenance and that of our minor children, if necessary for that purpose, and the balance of said residue to my said three sons, share and share alike, using their discretion whether to pay over the whole of the rent so coming due to any minor, to his guardian, or to pay the same for his education or support, or to invest it for his benefit after he shall have become of age."

Edmund D. Halsey and William H. Baker (a son of the testator) were appointed executors, and took upon themselves the burden of the trusts created by the will. Of three sons of testator, viz., William H., Andrew K. and David, living at his death, one (David) died afterwards, without issue, and it is conceded that the surviving sons took such benefit in the trusts as the deceased son would have taken. Edmund D. Halsey afterwards died, and William H. Baker is now the sole surviving executor and trustee under said will.

Appeals have been taken from two decrees made in the Morris county orphans court.

The first decree appealed from was made December 1st, 1899. Thereby three several accounts which had been allowed by previous decrees of that court were opened, on the ground of mis-

38

take as to the distribution of the mine rents by the accountants, to the end that such mistake should be corrected.

The first of the decrees thus opened was made July 5th, 1892, and allowed an account stated by William H. Baker and Edmund D. Halsey, trustees of William Hedges Baker, deceased. It appears thereby that the account had been duly audited and stated, and on citations to parties interested, Clarissa Baker, the widow of testator, had filed two exceptions thereto. She excepted, first, on the ground that the amount paid to her by the trustees out of the mine rents was insufficient for her comfortable maintenance, and next upon the ground that the residue of such mine rents, after the payments to her, had been paid to William H. Baker and Andrew K. Baker, while they ought to have been held by them for her comfortable maintenance, in the event of the mine producing no rent. The decree recited that it was made upon consent of the exceptant's proctor and of the executors and of Andrew K. Baker, in open court, and its terms were as follows:

"It is ordered and decreed that the said exceptions be considered waived, and that the executors hereafter pay to Clarissa Baker, widow of said William Hedges Baker, deceased, out of the mine rents to be received by them, the sum of $150 per month for the support, in addition to keeping the buildings on the homestead in necessary repair, so long as they shall continue to receive a royalty from the working of the mine on said homestead; and in case of the mine ceasing to pay royalty or rent, said William H. Baker and Andrew K. Baker shall pay to the said Clarissa Baker the sum of $100 per month for her said support which arrangement is to continue during the lifetime of the said Clarissa Baker, and it is further ordered, adjudged and decreed that the said account be allowed in all things as reported, and that the same be entered of record."

The second of the decrees thus opened was made August 6th, 1894, and allowed another account of Edmund D. Halsey and William H. Baker, executors and trustees of William Hedges Baker, deceased, no exceptions being made to its allowance.

The third of the decrees thus opened was made March 1st, 1897, and allowed an account of William H. Baker, surviving executor and trustee of William Hedges Baker, deceased, no exceptions having been made to its allowance.

The second decree appealed from was made April 3d, 1900, upon the following proceedings in the orphans court: In April, 1899, Clarissa Baker, the widow of William Hedges Baker, deceased, filed her petition in that court, setting out the will of said deceased; its probate by Edmund D. Halsey and William H. Baker, the executors named therein; the death of Halsey, and petitioner's application to William H. Baker, the surviving executor and trustee under the will, for the payment of money to her under the decree of said court of July 5th, 1892, and his refusal so to do; her petition to the orphans court thereupon to require him, as surviving executor and on his own account, together with Andrew, to account for and pay her the sums of money due to her in pursuance of said decree of the orphans court; and that the orphans court, upon her said petition, made the order prayed for, which was afterwards reversed in this court. The petition then proceeded to aver that she had applied to said William H. Baker, as surviving executor, and requested him to provide her with maintenance in accordance with the directions of the will, and to account for the royalties and rents received from said mine, which he refused to do. There was a prayer that said William H. Baker should be required to file an account for the moneys received for said royalties, and to pay her what money might be due her, or necessary for her support and maintenance.

A citation under said last-mentioned petition having been issued and served upon him, William H. Baker, surviving executor, rendered an account for the rents received from said mine from June 1st, 1888, to November 30th, 1896, and for payments claimed to have been made out of the same. It exhibited a balance in hand of $2.13.

To this account Clarissa Baker filed exceptions on the same day, and therein claimed that the account should exhibit a balance in hand amounting to $24,694.76, that sum being reached by adding to the admitted balance the sum of $12,342.84 paid to Andrew K. Baker, and $12,349.79 paid to said William H. Baker out of said mine rents, which payments were charged to have been made in violation of the terms of the will of William Hedges Baker, deceased.

The matter thus presented having been adjourned from time to time, Clarissa Baker filed a supplemental petition, including the matters stated in the first petition, and setting up the three decrees of 1892, 1894 and 1897, and praying that the accounts approved by those decrees should be reopened, and the decrees should be set aside for the correction of those accounts, and that it should be decreed that the payments to Andrew K. Baker and William H. Baker were not proper payments under the terms of the will, and that the surviving executor and trustee should be charged in his account with the amounts so paid. Upon this petition a rule to show cause was allowed, and after hearing evidence, the court made a decree sustaining the exceptions of Clarissa Baker to the account, and surcharged the accounting executor with the amount of $24,693.03. The decree further recited that application had been made to the court to determine a proper and reasonable amount to be paid to said Clarissa Baker for her maintenance and support out of said mine rents, and ordered the accountant to pay Clarissa Baker $100 a month for her maintenance and support since the 1st day of April, 1897, such sum being declared by said court to be a reasonable and proper sum to be paid her out of the mine rents for the purpose above stated. The orphans court has not made known, by any opinion, the reasons which induced it to make the decrees complained of, and I am left to conjecture them from the language of the decrees themselves and the arguments of counsel in their support.

Taking up the decree which was first in point of time, that which opened the three decrees allowing previous accounts of the executors and trustees, I find that it recites that it was made on the ground of mistake as to the disbursements of the mine rents received by the trustees, and appearing in such accounts, and its purpose is declared to be the correction of such mistake.

Whether the three accounts, the allowance of which was disturbed after a long lapse of years, were, strictly speaking, mere intermediate reports of the condition of the trust fund and its income, or were, in fact, settlements of a final and decisive character as to what was included in them, is a question of some moment, but not necessary to decide in this cause. The Orphans

Court act, which was in force when these three accounts were presented and passed, in its provisions for accounting, contained in sections 96 to 108 (*Gen. Stat. p. 2377*), did not require, in express terms, any annual or periodical account from executors, administrators or trustees, but only from guardians, yet the practice of presenting and procuring the allowance of such accounts was well nigh universal.

If, however, such intermediate accounts, when presented and duly allowed, do, in effect, settle finally some portion of the trust, it may be argued that they are settlements of the trustee's final accounts, although the trust still continues, and new duties will raise the necessity of further accounts. *Pomeroy* v. *Mills,* *10 Stew. Eq. 578.*

Whether a decree allowing an intermediate account, exhibiting payments by an accounting trustee out of the trust funds to different persons, would conclusively bar a *cestui que trust* from claiming, in a direct proceeding against the trustee, that certain payments should have been made to him and not to the persons appearing to have received them, it is not deemed necessary to determine. By the express provisions of section 108 of the Orphans Court act, above referred to, the settlement of final accounts is made conclusive on all the parties thereto, unless a resettlement is applied for upon proof of some fraud or mistake, to the satisfaction of the court.

There is no pretence that any fraud was shown in procuring the three decrees which were opened by the orphans court. The sole ground on which the orphans court was asked to act, and upon which it did act, was that of mistake.

The mistake claimed is said to have arisen (1) in the withdrawal by Clarissa Baker of the exceptions filed by her in 1892, and her consent to the decree of July 5th, 1892, upon the promise of her two sons (William and Andrew) to make payment to her, for her maintenance, of certain specific sums while mine rents should be received, and of certain less sums after mine rents ceased to be received; and (2) in her belief, induced by the circumstances, that the orphans court had power to adjudicate thereon, and to decree that her sons should make such payments to her, and that such decree could be enforced.

Baker's Case.

The promises of future payments, relied on by her, presented no case of mistake of fact. There was no misunderstanding of existing condition, but an incautious reliance on promises respecting their future conduct. The promises may, perhaps, be enforceable at law, but the mistake of reliance upon them was not a mistake justifying interference with the consent she made thereon.

The mistake as to the jurisdiction of the court and the effect of its decree was a mistake of law, apparently shared in by the parties and the court. It was an error of law, which might possibly be reviewed upon appeal, but not an error correctible by the method adopted in the orphans court. Upon any other view the final decree of an orphans court would possess no conclusive character, but would be open to reversal by any subsequent court which disagreed with the view of the law upon which the decree was based. It follows that if the three accounts in question were of the nature of final accounts and their allowance by decree was conclusive upon the parties, there was no justification for the decree opening them, because neither fraud nor mistake, within the Orphans Court act, was shown.

The general practice of presenting and procuring the allowance of intermediate accounts was recognized in the court of errors in *Jackson* v. *Reynolds, 12 Stew. Eq. 313.* It was decided that such an account was to be taken as, *prima facie,* correct, and not to be corrected or opened, except upon evidence of error, but that when it disclosed an allowance which was clearly erroneous on its face, the error might be corrected, and that such correction might be made in a direct proceeding attacking it for such error. See, also, *Griggs* v. *Shaw, 15 Stew. Eq. 631.*

But the error complained of in the three accounts in question is not disclosed by the accounts themselves. They show and claim allowance for payments made to the widow and to the sons. If the payments to the sons were unauthorized, the lack of authority can only be discovered by an examination of the will by which the trusts were created.

On the part of respondent it is contended that the will of William Hedges Baker and its trust provisions were, in fact, a

part of the proceedings; that by those provisions the trustees were not authorized to pay any of the mine rents received by them to the sons of testator, at least until they had taken measures to provide for the comfortable maintenance of the widow during her life or widowhood out of such mine rents, and that the allowance of payments out of the mine rents made to the sons was error appearing in the accounts.

The same contention is made in support of the decree which surcharged the account of appellant with the mine rents so paid to the sons.

On the other hand, it is contended that the orphans court possessed no power to construe the will of William Hedges Baker, and that its allowance of accounts under an adjudication as to the true construction of the will was not within its jurisdiction.

The act conferring jurisdiction on the orphans court to construe wills and to decree distribution thereunder became section 151 of the Orphans Court act of 1874. Its provisions are now contained in section 173 of the Orphans Court act of 1898. In the court of errors some doubt has been expressed as to the constitutional validity of legislation conferring upon the orphans court powers in respect to the construction of wills, which powers had been theretofore exercised by the court of chancery. *Adams v. Adams, 1 Dick. Ch. Rep. 298.* But the proceedings before us were not brought for the purpose of procuring the construction of the will. In the exercise of the power of the orphans court to examine and adjudicate upon accounts of executors, administrators and trustees, it had doubtless power to incidentally consider and construe wills in the determination of questions thus presented, as, *e. g.,* the interest of parties affected by the accounting. *Dunham v. Marsh, 7 Dick. Ch. Rep. 256; S. C., 7 Dick. Ch. Rep. 831.* For a like reason, if the action upon such accounts is considered to have either a *prima facie* or a conclusive effect, I have no doubt that the orphans court may consider and construe a will, if necessary to base their action upon, in allowing or disallowing the accounts presented.

Under these circumstances I think I may properly consider the decree appealed from, in respect to the construction evi-

dently put by the court below upon the third clause of the trust
created by the will of William Hedges Baker.  From the argu-
ment in support of the decree it is clear that the courts con-
strued it as requiring the trustees, out of the mine rents, to
provide the widow a comfortable maintenance, and as prohibit-
ing them from disposing of any part of the mine rents so as
to prevent them from making provision for such maintenance
in case the mine rents ceased to be paid.

It is argued for respondent that the testator evidently in-
tended that his widow should be provided with a comfortable
maintenance for the period of her life, if she remained his
widow.  But his intent in this respect must be discovered in
the language of his will.  If that is clear and unmistakable,
we are not at liberty to disregard the meaning of the language,
because we conceive that testator, if he had contemplated the
possibility of the mine rents ceasing to be paid (as it appears
they have), would have made such a provision as is claimed.
We must find such a provision in the language, and I am un-
able to discover that meaning therein.  Carefully read, the third
item of the trust does not contemplate or require a retention
or accumulation of the mine rents to provide for future con-
tingencies.  On the contrary, it expressly requires the devotion
of all of them as received (1) to the payment of taxes, repairs,
insurance and necessary expenses; (2) to the payment to the
widow of the residue for the comfortable maintenance of her-
self and minor children, *if necessary for that purpose,* and (3)
to the payment of the *balance of the residue* to his sons, share
and share alike.  The residue to be applied to the payment of
the widow is evidently what remains after taxes, repairs, insur-
ance and expenses have been paid.  The balance of the residue
is evidently that part of the mine rents received and not ex-
hausted by taxes, repairs, insurance and expenses, and by the
devotion out of them of what is necessary for the widow's com-
fortable maintenance from time to time.  That such balance of
the residue was not to be hoarded up or accumulated for her
future maintenance is rendered clear by the provision at the
close of the clause in question, whereby the trustees may exer-
cise an option as to the share of a son, viz., whether to pay it

to his guardian (who is Clarissa Baker under another provision of the will), or for his education and support, or to invest it for his benefit when of age. The same indication is given by the provision of the next clause of the trust, which directs the trustees to invest the proceeds of the sale of wood and timber and to pay the interest thereon "to or for the benefit of my said three sons as in the preceding clause they are directed to pay the balance of the residue of the mine rents."

Upon this evident construction I am driven to the conclusion that the orphans court erred in opening the settled accounts and in surcharging the accounting trustee, and the decrees appealed from must, for these reasons, be reversed.