In the matter of the estate of NATHANIEL W. MORRIS, deceased.

[Filed October 30th, 1903.]

Persons interested in an estate presented a petition to an orphans court to open several accounts filed by executors and allowed by the court, on the ground that the executors had not charged themselves with specified items of money or property of the deceased for which they should have accounted, and an order requiring the executors to show cause why the accounts should not be opened was made. The executors answered the petition and thereby admitted that they had omitted from the accounts, by inadvertence, certain of the items specified in the petition, but set up, by way of cross-petition, that they had omitted, by like inadvertence, certain disbursements and expenses for which they should have been allowed. An order to show cause was issued on the cross-petition, and both orders came to hearing together. The court found that the charges admitted, or proved to have been omitted, were at least equaled by the disbursements proved to have been omitted, and refused to open the accounts. On appeal from the order refusing—*Held*, (1) although the executors admitted mistakes which would be ground for the opening of the accounts under section 127 of the Orphans Court act of 1898, yet that on the cross-petition it was proper practice to proceed to investigate whether the mistakes as to charges admitted or proved exceeded the mistakes as to allowances for disbursements; (2) on such an appeal this court is required to review not only questions of law but questions of fact; (3) in this case, upon such a review, the decree of the orphans court is not found to be erroneous.

---

On appeal from the orphans court of Monmouth county.

Morris' Case.

*Mr. Acton C. Hartshorne,* for the appellants.

*Mr. Samuel C. Cowart,* for the respondents.

MAGIE, ORDINARY.

This appeal seeks a reversal of a decree of the orphans court of Monmouth county, made December 17th, 1900, refusing to open five separate accounts of the executors of Nathaniel W. Morris, deceased.

The cause in the orphans court was initiated by a petition filed February 26th, 1900, by appellants, as persons interested under the will of Nathaniel W. Morris, deceased, which will was proved in Monmouth county, July 17th, 1882. The petition sought to open and resettle several accounts filed by the executors of said Morris, who were Thomas E. Morris, John W. Morris and Peter Forman, or by Thomas E. Morris and Peter Forman, who were the survivors of said executors. One of these accounts had been passed and allowed November 15th, 1883; the second had been passed and allowed May 26th, 1886; the third had been passed and allowed October 27th, 1887; the fourth had been passed and allowed April 4th, 1889, and the last had been passed and allowed December 6th, 1897.

The sole ground for opening these accounts stated in the petition was that the executors had not charged themselves with certain items of money or property of the testator received by them, which, it was alleged, ought to have been included in their accounts, and if included would have enlarged the amount to be accounted for by them. The items charged to have been omitted from the accounts were specifically set forth in the petition. But the petition made no charge of fraud against the executors.

Upon this petition the orphans court, on February 26th, 1900, allowed a rule to show cause upon the surviving executors, Thomas E. Morris and Peter Forman, which rule was returnable March 15th, 1900.

On May 24th, 1900, the respondents, who are the surviving executors, filed an answer to appellants' petition, denying

some, but admitting others, of the omissions from their accounts, specifically charged and set out in the petition. They expressly declared, however, that such admitted omissions had occurred by mere inadvertence and mistake. They further alleged that, by like inadvertence and mistake, they had not prayed allowance, or been allowed in said accounts, for certain specified disbursements and payments made by them, and which if prayed and allowed would have discharged them from accounting for so much of testator's estate, and they petitioned that the previous accounts should be opened to allow such disbursements and payments, or be resettled as to the particular items omitted, if necessary for the correction of said accounts, or that they should be corrected in a sixth account, which the acting executor declared himself willing to make.

On May 25th, 1900, upon respondents' petition, the court allowed a rule to show cause upon the original petitioners, returnable June 12th, 1900.

The original petition was, on August 16th, 1900, permitted to be amended by adding other items charged to have been omitted by the executors from the previous accounts. No charge of fraud was made in the amended petition. On the same day respondents were permitted to amend their cross-petition by adding other items of disbursements and payments claimed to have been omitted from the previous accounts.

The transcript discloses that on August 2d, 1900, the same court had made an order requiring Thomas E. Morris, as the acting executor of testator, to show cause why he should not be required to give bonds to secure the funds of the estate in his hands, and that proofs had been taken, commencing January 12th, 1901.

Under the petition of appellants in this cause, and the cross-petition of respondents, voluminous proofs were taken, commencing June 12th, 1900, and the proofs taken under the order to show cause why the acting executor should not give bonds were, by stipulation, admitted to be considered in this cause. In the course of said proofs, which were taken before the court, an additional amendment of the petition of the appellants

seems to have been permitted. It was confined to a single item in one of the previous accounts, whereby executors claimed an allowance for services rendered, other than those performed as executors. The amendment was not formulated in writing, and counsel, in presenting it to the court, did not expressly charge fraud or indicate the nature of the mistake claimed in relation thereto.

On October 17th, 1900, the judge of the orphans court filed his conclusions, to the effect that fraud or mistake had not been proved to such a degree as to warrant the court in opening the accounts.

On December 17th, 1900, the court made the decree appealed from, refusing to open the accounts, and it was therein recited, as the basis of the action of the court, (1) that no fraud had been proved in the settlements of the accounts, and (2) that while errors had been proved, they were not established to such an extent as to make any difference in the said accounts.

This appeal was taken March 15th, 1901, but the transcript of the proceedings was not certified until January 1st, 1902. It was filed January 24th, 1902.

After the transcript was filed respondents gave notice of a motion, for March 18th, 1903, to dismiss the appeal on various grounds. Appellants gave a counter-notice, for the same day, for an order permitting them to take the testimony of one Ely, who had been examined before the orphans court, but whose testimony had not been reduced to writing or included in the transcript.

Upon the hearing of these counter-motions, they were thus disposed of: The motion to dismiss the appeal was denied, upon the ground that the case presented some questions which ought not to be disposed of upon such a motion, but only upon a final hearing of the appeal. The motion for leave to take the testimony of Ely was allowed, the relevancy and effect of said testimony being deemed to be open to consideration on the final hearing. Respondents, on February 3d, 1903, petitioned for a rehearing of the motion to dismiss the appeal, which petition was denied.

Morris' Case.

The cause then came on for hearing on September 22d, 1903, and is now to be disposed of.

It is to be noted that neither the original petition of appellants nor the amendments made, or presumed to be made, expressly charge any fraud committed by the executors in respect to the accounts, the opening of which is sought. Yet the court below evidently considered that the case involved such a charge, and evidence, otherwise inadmissible, was permitted to be taken. The action of the court, I apprehend, was in accord with the contention of appellants' counsel that the attack upon the allowance to the executors in one of these accounts, made by the proposed amendment last mentioned, might be successful, if fraud in the management of the estate had been established. The conclusion of the court below was that no fraud had been made out in proof.

Under these circumstances, I have thought it proper to consider the matter in this aspect. The result of my consideration has been to approve the result reached.

Fraud or misconduct of an executor will justify a court before which he makes his accounting in depriving him, in whole or in part, of his executor's commissions, the matter being within the discretion of the court. *Jacobus* v. *Munn, 11 Stew. Eq. 622.*

But the objection made by appellants was not pointed at the commissions allowed to the executors in the several accounts for their services in that capacity, but to an allowance made for services rendered to the estate, outside of the duties required of them as executors. Such services, we must assume, the court was satisfied had been rendered, and should be paid for. There is no necessity to infer that the charge was fraudulent.

But if the objection had been directed to the allowance of the executors' commission, a like result must follow. There was proof that one of the executors had used some of the funds of the estate in his own concerns. This was plain misconduct, but as it appeared that he had accounted for all the interest on the moneys so used the court might not have deemed it necessary to deprive the executor of his commissions. But there was proof that the executor concealed his use of the funds from his co-

executor and from those interested in the estate. It also appeared, however, that the executor in question had turned over the funds of the estate, satisfactorily secured, to a substituted trustee, so that no loss whatever had occurred to the estate by his misconduct. Under such circumstances it would be a matter for the exercise of the discretion of the court whether to allow him any or all the commissions which have been already awarded to him in the orphans court. It seems to me that it is not a case for an alteration of these accounts in that respect at this late day. In *Jacobus* v. *Munn, ubi supra,* there was a case of much more flagrant misconduct of an executor, and the court of errors permitted him to retain the commissions allowed by the orphans court.

The other phase of the attack upon these accounts raises questions which seemed to me to be novel. The application is to open accounts, the earliest of which had been allowed nearly seventeen years, and the latest of which had been allowed nearly three years, before the application was made. The transcript shows, and it is admitted, that no exceptions were presented to any of these accounts when allowance of them was prayed for by the executors, except to the fourth account, which was allowed April 4th, 1889, and that the vague exception which was then presented was withdrawn by the exceptants. The application to open these accounts which were so settled without objection has been put, in this aspect of the case, upon the ground of mistake therein. Such ground, when established by competent and sufficient proof to the satisfaction of the orphans court, justifies that court in opening any account passed and allowed by it, for resettlement, under the provisions of the last clause of section 127 of the Orphans Court act of 1898. *P. L. of 1898 p. 761.*

These provisions are in the identical language of section 32 of the "Act to ascertain the power and authority of the ordinary and his surrogates, to regulate the jurisdiction of the prerogative court and to establish an orphans court in the several counties of this state," passed June 13th, 1820 (*Rev. L. p. 87*), which was re-enacted in section 27 of the "Act respecting the

orphans court and the power and authority of the surrogates," approved April 16th, 1846 (*Gen. Stat.* ' *p. 214*), and again enacted in section 108 of the "Act respecting the orphans court and relating to the powers and duties of the ordinary and the orphans court and surrogates," approved March 27th, 1874. *Gen. Stat. p. 2380.*

The case in hand, however, presents this unusual feature. Appellants, by their petition for the opening of these accounts, charged that the executors had made material mistakes in the accounts, by the omission therefrom of specified items, with which they claim the executors should have charged themselves. The executors, by their answer, admitted the omission from the account of certain of the items specified in appellants' petition, but assert that the admitted omissions were the result of mere inadvertence and mistake. Upon such charge and such admission the case provided for by the statute manifestly was established. But the executors presented a counter-claim, asserting that while they admitted such omissions of items properly chargeable to them, they had also omitted items of payments and disbursements made by them which should have been charged to the estate and would have diminished the amount in their hands.

In dealing with the motion to dismiss this appeal, I adopted the view that there were two questions presented, too important to be decided upon such a motion. The first question was whether, upon such admissions, proper practice would not have required the orphans court to immediately open the accounts and put them in a state for re-examination and resettlement. The other question was whether, in the review of what was done in the orphans court upon such proceedings, this court is confined to a review of the questions of law presented in the court below, or may be required to consider and review the action of the orphans court on questions of fact.

While certain of the decrees of the orphans court were subject to review in the supreme court by *certiorari,* the extent of the reviewing power of that court upon the action of the orphans court in allowing or refusing to restate an account for fraud or

mistake was considered in the supreme court, in *Johnson* v. *Eicke, 7 Halst. 316,* and *Crombie* v. *Engle, 4 Harr. 82,* and it was held that the supreme court might review the action of the orphans court as well on questions of fact as on questions of law. The case last cited went to the court of errors and the judgment of the supreme court was reversed. Judge Carpenter, speaking for the whole court, declared the true doctrine to be that where the action of the orphans court upon a motion to open and restate an account for fraud or mistake does not involve a question of law but only of fact, the decision of the orphans court was not subject to review by the supreme court. *Engle* v. *Crombie, 1 Zab. 614.* By the amendments to the constitution adopted in 1874, all decrees of the orphans courts in matters within their jurisdiction are now reviewable by appeal to this court. This change in the mode in which the orphans court decrees may be reviewed was deemed by me to raise an important question, for the change gave jurisdiction to review all such decrees, to a court which had previously exercised jurisdiction, under statute, to review certain decrees of the orphans courts, and in exercising such jurisdiction had been accustomed to review not only questions of law but also questions of fact.

Upon the first of these questions I have reached the conclusion that the course adopted in the court below was a proper one. It is well established that when an account, once settled, is opened upon proof of fraud or mistake, it is not opened generally, but only in respect to the items proved to have been omitted by fraud or mistake. *Trimmer's Executors* v. *Adams, 3 C. E. Gr. 505; Hyer, Administratrix,* v. *Morehouse, Spenc. 125.* Yet it is manifest that if these accounts should have been opened for the purpose of adding to the charges against the executors those items which they admitted were omitted by mistake, the court would have been obliged to proceed to consider whether or not other omissions of charges against the executors were satisfactorily proved, and also whether or not the executors had made out, by satisfactory proof, the omission by mistake of items of discharge set forth in their cross-petition. This could be done better by the method adopted in the court below, and

which, it is proper to say, was adopted without objection by either side, than by opening the accounts and proceeding with a settlement involving the same matter at additional expense. I think, therefore, that the practice adopted in the court below was proper, and is not open to objection.

Upon the other question I have reached the conclusion that when the people conferred jurisdiction to review all orphans court decrees upon this court they intended that the jurisdiction should be exercised in the mode previously in use in this court in dealing with appeals from such decrees, and therefore that I was bound to consider as well questions of fact as of law involved in the action of the orphans court.

Upon this view I have read with care the mass of testimony presented to the orphans court. I have also considered the testimony of Ely, although I have grave doubts whether it is competent upon this appeal. The result is that the conclusion of the orphans court was, in my judgment, clearly correct. The proofs satisfactorily show that the items omitted by the executors from their accounts, which would have increased the amounts to be charged to them, which were either admitted by them or proved, were less than the amounts of disbursements and payments also omitted, which were proved by the executors, and were not included in their accounts.

It was therefore proper to deny the petition for an opening of the accounts.

The decree must therefore be affirmed. Before signing a decree I will hear counsel, if they desire, in respect to the costs of the appeal.