This is an appeal from an order of the Passaic County Orphans Court discharging an order to show cause why a final decree approving the executor's account should not be reopened so as to permit the appellant to file exceptions thereto.
The appellant's father, Victor Opitz, died in the city of Paterson, this state, on September 16th, 1925. He left a last will and testament which was admitted to probate in the county of Passaic on September 28th, 1925. The Franklin Trust Company of Paterson was named, and qualified, as executor and trustee under the will. On November 7th, 1925, it filed an inventory of the estate showing assets of the value of $76,337.43. No account was filed until March 15th, 1938. The account states there is no balance. It was allowed by final decree dated April 28th, 1938. To the account is annexed a statement showing that the securities in the hands of the *Page 488 
accountant consisted of 1,120 shares of preferred stock of the Paterson Mutual Hosiery Mills, Inc., having a par value of $100, which originally were inventoried at $73,763.20, and 1,103 shares of common stock in the same company, which at the time of the accounting had no stated value.
The decedent left him surviving his wife and one child, the appellant, who at the time of her father's death was of the age of eight years. The widow, on December 25th, 1926, married Herman Koerber.
Shortly after her father's death, the appellant, with her mother, removed to California. On November 19th, 1926, appellant's mother was appointed her guardian by the Superior Court of the State of California, Los Angeles county. Certified copies of that appointment were forwarded to the executor in a letter dated November 24th, 1926 (Exhibits D-1 and D-2). On March 29th, 1938, appellant attained her twenty-first birthday.
On March 15th, 1938, the executor mailed to appellant, and to her guardian, her mother, at the mother's address, State Game Farm, Yountville, California, notice that the account of the estate would be audited and reported for settlement by the Orphans Court of Passaic county on April 21st, 1938. On April 28th, 1938, the account was allowed and a decree signed by the judge of the Orphans Court.
On May 9th, 1938, the executor mailed a notice, or writing, to appellant and her mother, at the above address in California, that it would apply to the Orphans Court of Passaic county in June, 1938, for an order discharging it from further duties. On June 9th, 1938, such order was signed and entered by the Orphans Court.
The appellant lived with her mother and stepfather until sometime in the year 1935, when she became estranged from them, allegedly because of differences with her stepfather, and took up a residence in another part of the State of California. She alleges that she had no knowledge of her father's will, or that The Franklin Trust Company was executor and trustee thereunder, until the latter part of April, 1938, when she learned from her mother that a final account of her father's estate had been filed. Upon receiving that information *Page 489 
she requested, and received from her mother, the latter part of April, 1938, a copy of her father's will. She then wrote to the clerk of Passaic county for a copy of the account. She received it in the early part of May, 1938. At that time the final decree allowing the account had been filed.
While the appellant knew that her mother had been appointed her guardian, she declares that she had no knowledge or information about her father's estate. She had received no word about it from the executor, she asserts, and, consequently, could make no arrangement to be represented at the hearing on the accounting. She says the notice which the executor claims to have forwarded her was never received by her.
The will of the decedent, Victor Opitz, after ordering the payment of debts, gave a money bequest of $10,000 to his wife and the residue to his executor to "invest and keep the same invested" and to pay the income arising therefrom to his wife until his daughter, the appellant, became twenty-five years of age; but, in the event that his wife remarried (which she did) before his daughter attained the age of twenty-five years, then the executor was to pay one-quarter of the income to the wife and three-quarters of the income to the daughter until the daughter became twenty-five years of age. When she attained that age, the trust terminated and the trustee was to pay one-quarter of thecorpus to the wife and the remaining three-quarters to the daughter, the appellant.
The decedent's estate consisted practically of the stock in the Paterson Mutual Hosiery Mills, Inc. The hosiery company was a close corporation; it had few stockholders. Its stock was not listed on any exchange and there appeared to be no ready market for its sale or purchase. The executor says it offered the stock to brokers to sell, but they could find no market for it. It says it also mailed letters to stockholders of the company offering the stock for sale, but there were no purchasers for it.
From the year 1925 to 1927 the stock drew dividends. Thereafter, no dividends were paid. In 1931 the hosiery company became insolvent and a receiver was appointed for it by this court. *Page 490 
The appellant says that the executor was in a position to note the steadily declining financial strength of the hosiery company and to observe the continuous depreciation of the stock's worth, and despite its knowledge and observation it negligently held the stock and at no time made an attempt to sell it, with the result that it became valueless. She points to the fact that Hugo Huettig was vice-president and a director of the executor trust company; that he was also the president and treasurer and a director and stockholder of the hosiery company; that he knew that the trust company was executor of this estate; and that as such director and treasurer of the hosiery company, he was in a position to acquire full knowledge of its affairs, and was able to readily furnish the executor trust company with information of the hosiery company's doubtful financial position, and with falling value of decedent's stock. She contends that it is impossible to divorce the knowledge which Huettig had as a director and officer of the hosiery company from the knowledge which he had as a director and officer of The Franklin Trust Company. Hollingsworth v. Lederer, 125 N.J. Eq. 193;4 Atl. Rep. 2d 300. She argues that the stock was of a speculative nature, and that the executor trust company knew that to be so. Consequently, she says, it was the duty of the executor to sell the stock or to apply to the court for instructions as to the retention or disposition of it.
R.S. 1937, 3:10-18 relates to decrees on final account; it reads as follows:
"The decree of the ordinary or orphans court on the final account and settlement of a fiduciary shall be conclusive on all parties and shall exonerate and discharge the accountant from all demands of creditors, legatees or others, beyond the amount of the settlement, except for assets which may come to hand thereafter and in cases where a person applying for resettlement proves fraud or mistake in the account to the satisfaction of the court."
The provisions of the statute are quite clear. It lays down the terms under which a decree or final account may be reopened. One of the terms necessary to such purpose is that the moving party is required to establish "fraud or mistake in the account to the satisfaction of the court." The numerous *Page 491 
cases cited by the parties to this proceeding, in effect, are authority for the doctrine that such decrees of settlement will be set aside only when the petition "proves fraud or mistake in the account," or where assets come to hand after a settlement has been decreed. See Johnson v. Eicke, 12 N.J. Law 316; In reMorris' Estate, 65 N.J. Eq. 699; 56 Atl. Rep. 161. The petition filed herein makes no allegation of fraud or mistake in the settlement of the account. Hyer, Adm'x, v. Morehouse,20 N.J. Law 125. In Beam v. Paterson Safe Deposit and Trust Co.,83 N.J. Eq. 628; 92 Atl. Rep. 351, the court, among other things, said:
"We differ from his conclusion that the defendant has failed to establish the exercise of good faith and reasonable discretion, which is the duty imposed by the statute. Comp. Stat. p. 2271pl. 34. Its good faith is not questioned. * * * subsequently, the securities became practically worthless, and a rapid fall began in the summer of 1907. This is shown to have been a time of financial depression when the best securities dropped in value. We think that even then the trustee was not required to sell, since great shrinkages take place at such times which are subsequently recovered; the trustee might be held liable for loss if he sold when the market was low and there was a subsequent recovery. The testimony is uncontradicted that nothing occurred to disturb anyone's sense of security until about September, 1907, when receivers were appointed for the New York City Railroad Company, the lessee of the companies whose securities are now in question. * * * We see no reason to doubt and there is no evidence to the contrary, that all was done that was possible. * * * When the default in dividends and interest came later, the time had passed when it was possible to save the situation. There was no market for the securities; the quotations are shown to have been merely nominal and of a speculative character; * * * In the face of this uncontradicted testimony, we are unable to see what the trustee could have done; its good faith is unquestioned and is conceded; we think it exercised reasonable discretion. It is indeed suggested that the trustee should have sought the protection of an order of court under the act of 1889; but such *Page 492 
an order would have done no more than give the authority which the statute of 1899 itself conferred. * * *
"We think the defendant in this case has proved that it exercised good faith and reasonable discretion, and as the statute enacts is not accountable for any loss by reason of the continuance of the investments. * * * The decree must be reversed and a decree entered dismissing the bill, with costs." In reSlater's Estate, 88 N.J. Eq. 296; 102 Atl. Rep. 384; Wyckoff v.O'Niel, 71 N.J. Eq. 681; 63 Atl. Rep. 982; In re Baker's Estate,61 N.J. Eq. 592; 47 Atl. Rep. 1046; Search's Administrator v.Search's Administrators, 27 N.J. Eq. 137.
The court in In re Hazeltine's Estate, 119 N.J. Eq. 308;182 Atl. Rep. 357, among other things, in effect, said:
"* * * an application to have an account opened is addressed to the sound discretion of the court; that fraud or mistake must be proved to the satisfaction of the court; that the burden of showing fraud or mistake is upon the applicant; that if an account is opened without legal proof, the proceedings will be set aside." Engle v. Crombie, 21 N.J. Law 614.
The statute of this state provides that in cases where testator has invested in shares of stock in a corporation, and it comes into the hands of his executor or trustee, and by him administered, such fiduciary may "by the exercise of good faith and reasonable discretion, continue such investments, and in such cases he shall not be accountable for any loss by reason of such continuance." R.S. 3:16-12.
The executor trust company calls attention to the fact that in 1929 "this country experienced the worst financial depression in its entire history;" that "the nation as a whole participated in what was a world-wide depression, but to make the matter of more specific concern, the silk industry in the city of Paterson, and elsewhere, experienced a depression and disintegration that has been unprecedented;" that "as early as May, 1926, almost immediately after the inheritance tax waivers were received, the bank instituted a continuous campaign to dispose of the preferred stock of the estate, and that such efforts continued until 1931, when the company became insolvent. Thereafter the estate failed to produce enough money to pay administration expenses." *Page 493 
I find no evidence of either fraud, mistake, negligence or misconduct on the part of the executor in handling the affairs of the instant estate. I am convinced that under the adverse conditions which confronted it, the executor was powerless to prevent the loss which unfortunately resulted. It made futile attempts to dispose of the estate's stock, but there were no buyers. True, it did not seek instructions from the court under the circumstances; and had it done so, the court, no doubt, would have directed it to do what it had endeavored to do (without success), sell the stock. I believe in its administration, it acted with ordinary care, prudence and diligence. I think it used its best judgment, and under those circumstances it cannot be penalized.
The court in In re Griggs, 125 N.J. Eq. 73; 4 Atl. Rep.
2d 59, in part said:
"All that the law exacted of our trustee in the administration of its stewardship was an obligation of faithfulness to thecestuis and a duty to exercise ordinary care, prudence and diligence. Smith v. Jones, 89 N.J. Eq. 502;105 Atl. Rep. 380. So long as it acted in good faith, with ordinary care, caution and discretion and within the scope of its powers, our trustee cannot, and will not, be held liable for the consequence of its mere mistakes, even if such there were, resulting from mere errors of judgment and not proceeding from any fraud, gross carelessness or indifference to duty on its part. * * * A similar rule in regard to retention by trustees of investments made by the testator has been enacted by the legislature of this state into a statute. R.S. 1937, 3:16-12. Nor does the mere fact that the officers and directors of our trustee are stockholders in it, and retained, as part of the trust fund the shares of stock now questioned, during or after a declining market, give rise, ipsofacto, to a presumption of bad faith so as to render it liable for the resulting depreciation or loss.
 * * * * * * *
"It exercised its best judgment and circumspection in determining whether to sell or retain the very stock which the testator himself had acquired and held as an investment. Even if it could then have been definitely said and determined *Page 494 
that it erred in its judgment, nevertheless that alone could not render it now liable to being surcharged." Hewitt v. Hewitt,113 N.J. Eq. 299; 166 Atl. Rep. 528.
It is to be borne in mind that the executor trust company forwarded notices of the filing of its account and its application for discharge to the appellant and to her guardian, her mother. If appellant's guardian failed or neglected to act to preserve, or protect, appellant's rights — if any were in jeopardy — such failure, or neglect, is not chargeable to the executor; it did all that the statute required it to do. While the situation of the appellant excites the sympathy of the court, the record as a whole shows no fraud, mistake, misconduct or reprehensible act on the part of the executor trust company. The estate, in my opinion, is the victim of a tragic depression that has affected practically every part of the world. Considering all the circumstances, I am obliged to advise a decree dismissing the appeal. *Page 495