CARRIE S. BEAM, respondent,

*v.*

PATERSON SAFE DEPOSIT AND TRUST COMPANY, appellant.

[Argued March 18th, 1914.   Decided November 16th, 1914.]

A trustee received as part of the trust fund stocks and bonds of corporations in which the testator had invested in his lifetime, which were supposed to be of the highest class; subsequently they depreciated at a time of financial depression; another corporation to which the properties had been leased became insolvent; the court directed the receiver to borrow money on receiver's certificates to pay the rent, and it was paid; later there was a default, but there was then no market for the securities; quotations were merely nominal and of a speculative character; the securities were unsalable.—*Held,* that since the good faith of the trustee was conceded, it had under the special facts of the case exercised reasonable discretion and was not liable for the loss.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell, whose opinion is reported in *82 N. J. Eq. 518.*

Mr. *Pierre F. Cook,* for the respondent.

Mr. *John W. Harding* and Messrs. *Griggs & Harding,* for the appellant.

The opinion of the court was delivered by

SWAYZE, J.

We agree with the learned vice-chancellor that the burden of proving that the trustee exercised good faith and reasonable discretion is upon the defendant, as we have already decided upon appeal from the order refusing to strike out the bill. *81 N. J. Eq. 195.* We differ from his conclusion that the defendant has failed to establish the exercise of good faith and reasonable discretion, which is the duty imposed by the statute. *Comp. Stat. p. 2271 pl. 34.* Its good faith is not questioned. Our examination of the facts shows that the securities were supposed to be of the highest class; that on August 1st, 1906, the date fixed by the vice-chancellor as the time when the trustee should have sold, they had fallen, as follows:  Central Park, North and East River Railway stock, from 206 bid and 210 asked to 195 bid and 200 asked; Twenty-eighth and Twenty-ninth Streets Crosstown Railroad first mortgage bonds, from 112 bid and 113½ asked to 102 bid and 105¼ asked; Second Avenue Railroad Company Consolidated 5's, due 1948, from 115 bid and 117 asked to 111 bid and 113 asked. The prices at the date fixed by the vice-chancellor while lower than when the trust company acquired the securities, were still prices commanded by high-grade investments. To hold that so slight a variation in the market required the trustee to sell would, in effect, require a trustee to watch the "ticker" as any mere speculator might. This is not the duty of a trustee. He is to invest in safe productive securities and mere fluctuations in market price which may be due to variation in the current rate of interest or in the current demand

for ready money in panic or in war, ought not to force him to sell. Were it otherwise, it would practically be impossible to invest a trust fund with any approach to permanence, and the loss of interest on the constant reinvestment might be a serious loss to the *cestui que trust*. These considerations suffice to show that the date fixed by the vice-chancellor cannot be justified. We cannot, however, leave the case at that since, subsequently, the securities became practically worthless, and a rapid fall began in the summer of 1907. This is shown to have been a time of financial depression when the best securities dropped in value. We think that even then the trustee was not required to sell, since great shrinkages take place at such times which are subsequently recovered; the trustee might be held liable for loss if he sold when the market was low and there was a subsequent recovery. The testimony is uncontradicted that nothing occurred to disturb anyone's sense of security until about September, 1907, when receivers were appointed for the New York City Railroad Company, the lessee of the companies whose securities are now in question. This led to the trustee taking steps to protect the interests of its *cestuis que trust* as well as its own interest as holders of the same securities. We see no reason to doubt, and there is no evidence to the contrary, that all was done that was possible. The federal court in New York directed the receivers of the New York City Railroad Company to operate the whole system, and to borrow money on receivers' certificates to pay the rent on the leases of the three companies. There was no default until 1908. The dividend on the Central Park stock was paid on January 1st, 1908; the interest on the Second Avenue bonds on February 1st, 1908, and on the Twenty-eighth and Twenty-ninth Streets Crosstown bonds on April 1st, 1908. As long as the dividends and interest were regularly paid under an order of the court, the trustees were certainly justified in disregarding the market fluctuations, unless there was something else to arouse their suspicions; there is no proof that there was. When the default in dividends and interest came later, the time had passed when it was possible to save the situation. There was no market for the securities; the quotations are shown to have been merely nominal and of a speculative character; as one witness

said, "you couldn't do anything; the bottom fell out com-
pletely;" or, as another witness put it, "they were unsalable;
where a stock was quoted as 50 bid, if you had offered ten shares
you couldn't have got fifty per cent. of the nominal quotation
price." In the face of this uncontradicted testimony, we are
unable to see what the trustee could have done; its good faith
is unquestioned and is conceded; we think it exercised reason-
able discretion. It is indeed suggested that the trustee should
have sought the protection of an order of court under the act of
1889; but such an order would have done no more than give the
authority which the statute of 1899 itself conferred. From
whatever source the authority came, whether from the court or
the legislature, the trustees would at least have been bound there-
after to exercise the good faith and reasonable discretion that the
act of 1899 requires.

It is also suggested that perhaps an examination of the records
would have disclosed that the old mortgage on the Central Park
road was uncanceled. The difficulty is that it is impracticable to
require trustees investing in bonds for a comparatively small
amount, a portion of a large issue, to make such an examination.
The expense would be prohibitory, and, as business is done by
careful investors, reliance must be had upon the opinions of
bankers who have made, or may properly be supposed to have
made, the necessary examination and inquiry for their clients.
This is one of the useful purposes served by bankers in our
modern business organization.

We think the defendant in this case has proved that it exer-
cised good faith and reasonable discretion, and as the statute
enacts is not accountable for any loss by reason of the continu-
ance of the investments. If it is necessary to refer to the ad-
judged cases, it is enough to cite *Matter of Weston, 91 N. Y.
503; Matter of Mercantile Trust Co., 141 N. Y. Supp. 460;
Bowker* v. *Pierce, 130 Mass. 262.* The decree must be reversed
and a decree entered dismissing the bill, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD,
PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH,
TERHUNE—10.