HENRY F. BACKES

*v.*

CYRUS B. CRANE et al.

[Decided March 6th, 1917.]

1. Where a trustee knew that he could obtain a dividend for his trust fund and neglected to do it, he was guilty of neglect and chargeable with the amount he neglected to collect.

2. He is also chargeable with interest, the rate being subject to the equities of each particular case, and in this case the rate is fixed at four per cent., in conformity with the English rule.

3. *Jones* v. *Haines, 79 N. J. Eq. 110,* distinguished.

4. A complainant may be barred from recovery even if there be an express trust by laches, where injury to defendant caused by the delay is proven or may be inferred because of loss of testimony or some other reason..

On bill, &c.

*Messrs. Church & Harrison,* for the complainant.

*Mr. Albert W. Harris,* for the defendants.

LANE, V. C.

I have considered whether, under the circumstances, the estate of Asher Crane is liable for the portion of the trust fund which could have been obtained about the year 1880 from the estate of Moses P. Crane if Asher Crane had performed his duties as a trustee and had not refused, as he did, to accept the dividend. I have come to the conclusion that the estate is responsible. The ground upon which I declined to hold the estate responsible for the entire trust fund was laches on the part of the complainant. I held that under the decisions which were cited, where injury was proven or might be inferred because of loss of testimony or what not, laches would bar even where there was an express trust.

This reasoning does not apply to the dividend which might have been received. The action or non-action on the part of the trustee was a distinct and separate breach of trust. The bond and mortgage were made to Asher Crane, as trustee; he had possession of them; they are now produced from the custody of his executors. There is no claim that Henry F. Backes knew that any dividend could have been obtained from the assets of Moses P. Crane, or that Asher Crane ever sought to bring his attention to that fact. If Asher Crane desired to relieve himself of all the burdens of trust he should have notified the complainant and should have delivered to the complainant the bond and mortgage so that the complainant might have protected himself (whether if he had so acted it would have released him I do not decide). On the contrary, he failed to protect the trust fund and permitted complainant to remain in a position without his knowledge where he could not protect himself. Without knowledge there can be no laches in the case of an express trust. *39 Cyc. 604*, and cases cited in the original conclusions.

It has not been proven, and there is no suggestion, that the delay of the complainant, so far as this branch of the case is concerned, has prejudiced the defendants, no injury can be inferred. Counsel for defendant does not claim it may be inferred. The facts are admitted, and could not be changed, no matter how many witnesses were produced.

I, therefore, hold that the estate of Asher Crane must account for seventeen per cent. of $5,600, or the sum of $952, as of 1881. The actual date when this money would have been paid, and the actual percentage, may be somewhat doubtful. If so, it is the fault of Asher Crane. I will, however, if there is any way by which definite proof can be obtained, refer the matter to a master, if counsel so elect. In case of failure to make such an application, I shall treat the percentage as seventeen and the year in which it might have been received and invested as 1881.

The next question is as to whether the estate should be charged with interest, and, if so, at what rate, and for how long a time. The trust agreement provided that the trustee should safely and securely invest the sum on bond and mortgage or in stock or securities, and the interest or income arising therefrom be paid

in equal half-yearly payments during the natural life of Charlotte Backes. to her, and after her death then to 'pay the sum, "together with all interest that may have accrued and shall remain unpaid at the death of said Charlotte Backes, to the complainant." The duty of the trustee was not only to retain possession of the money but to invest. He neglected to receive the $952, and hence neglected to invest it. Under the circumstances, the case must be treated as if he had in fact received and had failed to invest it. The general rule is expressed in *39 Cyc. 428*, as follows:

"The rule of computation in each case must depend very much upon its own facts. The beneficiaries are entitled to such method of calculation as shall most closely approximate the amount which would probably have resulted from the fulfillment of the obvious duties of the trust."

The rule in England seems to be that where an executor or trustee is guilty of mere neglect—that is, where having moneys in his hands which he ought to invest he neglects this duty, but derives no benefit from the use of it, he will be charged only with interest at four per cent. *39 Cyc. 425 note 19*, and cases cited.

The solution of the problem depends upon the circumstances of each particular case. Although as a general rule it may fairly be stated that where the trustee is guilty of gross neglect of fraud, or mingles the money with his own, he should be charged with interest at the legal rate, with annual rests, and, if he is guilty of mere neglect, with simple interest only, this rule is subject to exceptions, and the real question is what the equities of the particular case demand. I gather this from a consideration of the following cases in this state: *Voorhees* v. *Stoothoff, 11 N. J. Law 145; Johnson* v. *Eicke, 12 N. J. Law 316; Lake, Administrator,* v. *Park, Executor, 19 N. J. Law 108; Blauvelt* v. *Ackerman, 23 N. J. Eq. 495; McKnight's Executors* v. *Walsh, 24 N. J. Eq. 498; Ashhurst* v. *Fields, Administrator, 28 N. J. Eq. 315; Wilson* v. *Staats, 33 N. J. Eq. 524; Fluck* v. *Lake, 54 N. J. Eq. 638; Windmuller* v. *Spirits Distributing Co., 83 N. J. Eq. 6.* And see also note to *Re Ricker, 29 L. R. A. 636*, and (at *p. 637*) where the author says:

"The improper investments of the trust fund is equivalent to a failure to invest it and is governed by the same rules with reference to the allowance of interest. The fund will be treated as remaining in the hands of the trustee and interest will be charged at the ordinary rate only."

In the case at bar, the direction to invest was either in mortgage or securities. No rate of interest was fixed. The trustee was under the duty of realizing as much as he fairly could. In England it has been said that where the direction to invest is in similar words no interest will be allowed. *39 Cyc. 416 note 61,* and cases. I do not think that this is the present rule. The result sought for should be to make the estate good—that is, to realize as much for the estate as can fairly be said would have been realized if the trustee had performed his duty. There was no actual fraud in the present case. The trustee, undoubtedly, thought that he had the right to do what he did do. The complainant has been guilty of great delay in asserting his rights. While, as matter of law, I think it cannot be held that he is guilty of laches, such as to bar his right to relief, yet, under all the circumstances, my conclusion is that justice will be done by allowing interest at the rate of four per cent. It is claimed that the offer made by Asher Crane of $2,800 bars the complainant from recovering interest. I think not. From the beginning the complainant insisted that Asher Crane was responsible for the entire trust fund. This Asher Crane denied. The offer of $2,-800 was made in consideration of a release by the complainant of his entire claim. It was not offered in settlement of the second breach of trust. Under the circumstances, therefore, the complainant's refusal to accept the sum cannot now bar him from claiming interest. I do not overlook the case of *Jones* v. *Haines, 79 N. J. Eq. 110,* in which Vice-Chancellor Leaming, upon the ground that interest would necessarily, in that case, be as damages, declined to allow it for twenty-eight years because of laches of complainant, although holding that the laches was not sufficient to bar recovery of the principal sum. The circumstances were peculiar, and may be, I think, clearly distinguished from those existing to the present case. There the complainant had knowledge and deliberately delayed asserting her rights because

she thought that she would receive a greater amount under the will of the trustee than she was entitled to from the estate of her father. Here there was no such knowledge and no deliberate failure to demand. Under the trust agreement it would appear that the complainant is entitled at this time not only to the principal sum but the interest which had accrued, or should have accrued prior to the death of his mother. I think, therefore, that the complainant is entitled to the sum of $952, with interest at the rate of four per cent. to the date of the death of the mother. A different rule should be applied after 1906. At that time complainant was in a position in which he could call upon the executors of Asher Crane to account for this trust. If he had, his right to the funds, which I now hold he is entitled to, would have been disclosed. Prior to that he might have filed a bill *quia timet,* but he could not have required the trustee or executors to pay over the money to him. I think that it would be inequitable to charge the estate of Asher Crane with interest subsequent to 1906. See *Lake, Administrator,* v. *Park, 19 N. J. Law 110.* There will be a decree that the defendant's account for the sum of $952, with interest from 1881 to 1906, $950, or total of $1,902, and with interest upon the whole sum at the rate of six per cent. from the date of the decree.

Counsel should consider whether it is necessary in this view of the case to amend the bill. Costs will go to the complainant. The decree may be settled on notice. Application may then be made for counsel fees.