This appeal is from an order of the orphans court surcharging the final account of the administrator with $3,000. Mary P. Jones died in July, 1916, intestate, leaving a son, daughter and two grandsons, children of a deceased son. After a contest between them for administration, the court appointed a stranger, Clarence C. Smith, who administered, and submitted his account for confirmation. The two grandsons filed an exception, setting up that the administrator had failed to charge himself with $3,000, money of the defendant, alleged to have been unlawfully obtained from her by her two surviving children shortly before her death. The exception was sustained and this appeal was taken. The proofs show that in December, 1915, the deceased received from the executor of her brother's estate, in part payment of her distributive share, a check, payable to her order, for $3,000, for which she executed a release. Her son, James P. Jones, carried the check to her and returned the release. On January 18th he presented the check, bearing the endorsement of his mother, to the cashier of the Belvidere National Bank and directed him to credit one-half of the amount to his account and the other to that of his sister, Margaret Warne, which was done. The deceased left a note, in her handwriting, found in the box containing her securities, stating that she had given the $3,000 to her son and daughter. The administrator was the executor who drew the check, and he was also cashier of the bank. The deceased was eighty-six years of age, and although physically impaired was, to use the language of one of her grandsons, "an exceptionally bright woman, of a splendid disposition and of fine intelligence." She lived alone with a maid and conducted her household affairs well, and her financial transactions wisely, to the day of her death. The day before her death she went automobile riding with one of her grandsons, and was in good spirits. She had a "bad spell" in December, and her daughter, Mrs. *Page 504 
Warne, came on from the west to attend her. In May following she had another. The illness affected her mind and memory for the time being, but when the spells had passed she became normal. The two grandsons evidently had some intimation of the payment of the $3,000, shortly after it was made, and they wrote to the executor, who confirmed their suspicion. They communicated with their Uncle James, asking what had become of the money, and his reply being unsatisfactory, one of them asked his grandmother point-blank whether she had given any of it to his uncle and aunt, to which she answered evasively that she thought she had given them some money, but she was not quite sure, and added, "I want you boys to have your share of that, too." In this conversation she called his attention to the fact that she held a note or two of his father amounting to about $1,000, and suggested that "Maybe it would be just as well to let it apply upon that," and that she would straighten it out the next time he came up. After the funeral the grandsons persisted in their efforts to discover the $3,000, but without success, their uncle and aunt refusing to inform them, stating that they had made a solemn promise not to tell. After the litigation over the right to administer, the administrator tried to restore peace and avert further litigation, and at the instance of Mr. Jones and Mrs. Warne, offered to pay the grandsons $1,000 in the closing of the estate, as their share of the $3,000, but they refused to be reconciled. They requested the administrator to commence suit, which he failed to do, and, upon his failure to charge himself with the amount, they took exception. There is no ulterior significance attached to the circumstances that the administrator drew the check as executor of another estate, and as cashier of the bank divided the proceeds. They were mere coincidents. Nor does it appear other than that, throughout the affairs, the administrator acted impartially and in good faith. He was selected by the court as administrator for his known probity. The orphans court tried the exception upon the theory that the sole issue was whether there was a gift to the son and daughter, and that they were the real parties to the action. It rejected their testimony of the transaction with their mother, tending to show a gift, as incompetent under the statute, and ruled that by reason of the *Page 505 
enfeebled condition of the deceased, and the confidential relation existing between her and her children, a presumption against the validity of the gift arose, which had not been overcome by proof that the gift was knowingly made and without undue influence on the part of the donees, following Haydock v. Haydock, 34 N.J. Eq. 570.
The court erred in adjudging the administrator liable, based upon its finding that there had been no gift, and also in excluding the testimony offered to show that a valid gift had been made. Whether the $3,000 were assets of the estate, undisposed of, was a proper matter for investigation, but the conclusion reached by the court, upon the evidence before it, that the gift was invalid, and that the amount was collectible by the administrator, establishes but one factor toward his accountability. Before he could be condemned in damages, it was necessary to further find upon the proofs that it had been lost to the estate through his neglect. The law exacts of an administrator or trustee in the performance of his duty only the utmost good faith, ordinary care and prudence and reasonable diligence. When these are fairly exercised, he is not responsible, even though loss ensues. The good faith of the administrator was not challenged, and lack of care and diligence formed no part of the considerations in the court below; and if the court had considered this phase of the case, it seems to me, it would not have been warranted in finding the administrator derelict in the discharge of his duty. The judgment of the court that the gift was invalid, and that the amount was an asset of the estate, to which the administrator was entitled, does not predicate lack of care or prudence in the administrator. His failure to determine the rights of the parties with legal nicety was not carelessness. He judged the matter as the average man would. Actual imposition or fraud upon the mother by son and daughter was not charged. Their character and standing forbid even an insinuation of this. It is to be assumed that in passing judgment the administrator had before him the circumstances that have been heretofore related, and also the additional facts testified to by the donees, which the court below excluded, but which I admitted over objection. By their testimony it appears that when the son, James, gave his mother the *Page 506 
check, in December, she put it in her purse, and that when he called to pay her a visit on the 17th or 18th of January, she gave it to him, stating that she desired it to be divided between himself and his sister. Both affirm, and, believably, that the gift was voluntary and without the slightest suggestion on their part. With this explanation, supported by the note the old lady left, and her statement to her grandson indicating that the gift to her two surviving children was to equalize the advancement to, or debt of, her deceased son, and the fact that the gift in itself was a perfectly natural one, was it unreasonable for the administrator to conclude that the gift was perfect and the amount not recoverable by suit? I confess that I have grave doubt as to a successful prosecution for its recovery. The question is not, "Did he err," but, "Did the estate suffer harm through his unmindfulness of duty?" "So long as an executor acts in good faith and with ordinary discretion, and within the scope of his powers, his acts cannot be successfully assailed. No man is infallible; the wisest make mistakes; but the law holds no man responsible for the consequences of his mistakes which are the result of the imperfection of human judgment, and do not proceed from fraud, gross carelessness or indifference to duty. * * * Indeed, he may do anything within the scope of his powers, without the least risk of personal liability for the consequences of his acts, provided he exercises the care and judgment of a man of ordinary prudence and sagacity. That is the test which the courts are required to apply in all cases." Heisler v. Sharp, 44 N.J. Eq. 167.
The hardship of the judgment below is emphasized by the precariousness of the claim. If a court of competent jurisdiction should declare the gift valid, a most embarrassing situation would be presented. The estate has not as yet suffered loss. The right of action is not barred, and the donees are financially responsible; in fact, sufficient remains in the hands of the administrator to insure payment in the event of a recovery. The decree below, in respect of the exception, will be reversed, with directions that the grandsons be permitted to sue in the name of the administrator to recover the amount of the gift, upon filing a stipulation, pledging their distributive portion of the estate to indemnify the *Page 507 
administrator against costs. An administrator is not bound to enforce a doubtful or controverted claim merely because the heirs think it is well founded, unless they are willing to give indermnity for costs. Sandborn
v. Goodhus, 38 N. H. 48; Harris v. Orr, 48 W. Va. 361. The grandsons should conduct the suit so as to remove further criticism of the administrator. In the case of Thomas Lommason's Will, Chief-Justice Beasley, sitting in the Warren orphans court, directed the exceptants to prosecute a claim held by the estate, upon giving indemnity, because the executor might be embarrassed in bringing the suit. The opinion has been lost, but the reason is recited in the order made January 16th, 1865.
A cross-appeal was taken (rule 62) from so much of the decree overruling an exception to a credit of $57 paid to Mary Jones for services. The proofs sustain the claim and the decree in this respect is affirmed. The appellant is entitled to costs.
A few words as to the evidence of the donees, of conversations with their mother, concerning the gift, which was rejected as incompetent. It should have been received. The fourth section of the Evidence act (2Comp. Stat. p. 2218) provides —
In all civil actions any party thereto may be sworn and examined as a witness, notwithstanding any party thereto may sue or be sued in a representative capacity; provided, this section shall not extend to permit testimony to be given by any party to the action as to any transaction with or statement by any testator or intestate represented in said action, unless the representative offers himself as a witness on his own behalf, and testifies to any transaction with or statement by his testator or intestate, in which event the other party may be a witness on his own behalf as to all transactions with or statements by such testator or intestate, which are pertinent to the issue."
It disqualifies only the parties to the action from giving testimony of conversations with the deceased, and does not extend to those who may be ultimately benefited by the result of the suit. The donees were not parties to the litigation, nor were they interested one way or the other in the outcome. The matter to be determined was whether the administrator should be charged with the amount of the check because of his failure of duty. To this, the question of gift or no gift, as between the *Page 508 
estate and the donees, was merely incidental, and the right of the estate to recovery against them remained untouched and unforeclosed by the judgment. The situation is not like that in Smith v. Burnet,34 N.J. Eq. 819; affirmed, 35 N.J. Eq. 814, the doctrine of which the orphans court applied. In that case the executor failed to charge himself with certain insurance company stock and the dividends thereon, standing in the name of the deceased, which he claimed had been given to him by the testator. At the trial of the exceptions, the executor offered himself as a witness to establish the gift, and his testimony as to conversations with the testator in respect of it, was excluded as incompetent, within the prohibition of the statute. VanWagene v. Bonnot,74 N.J. Eq. 847, was an interpleader suit filed by the stakeholder against the administrator of the donor and the donee to determine the ownership of certain bank accounts. The testimony of the donee, concerning transactions with the deceased relating to the gift, was held to be incompetent. In both these cases the testimony rejected was that of the parties to the proceedings who claimed the gift. In the case in hand, the thing in action was not the gift, but the damage arising from the loss of it. The parties to the action were the administrator, on the one hand, and exceptants representing the estate, on the other, and if the administrator had offered to testify of conversations with his intestate, for the purpose of exonerating himself, he would have been barred upon the authority of the cases cited. The case of Rairdon v.Sampson, 67 N.J.L. 846, is more nearly in point. There, the administrator of Rairdon sued to recover wages of his intestate, and called the widow as a witness, who testified to conversations and transactions between the intestate and the defendant. She was vitally interested in the outcome of the suit, as sole distributee of her husband's estate, but the court declared that her testimony did not open the door to the defendant to give counter-testimony of conversations and transactions with the deceased, because she was not a party to the action.
 *Page 258