June 1st, 1916, the Monmouth Lighting Company, a corporation of this state, executed a deed of trust to the Freehold *Page 406 
Trust Company, located in Freehold, Monmouth county. The indenture conveyed property in Monmouth county, to secure an issue of bonds not to exceed the sum of $3,000,000, in the denomination of $1,000 each, bearing interest at the rate of five per cent., payable semi-annually, and to mature on June 1st, 1946, but reserving to itself the right to redeem any and all of the bonds on any interest date on and after June 1st, 1931, at par and a premium of five per cent.
The Jersey Central Power and Light Company, by merger and consolidaton, became successor to the Monmouth Lighting Company, and on July 7th, 1931, called the bonds for redemption, specifying December 1st, 1931, as the redemption date. The Jersey Central Power and Light Company, on July 19th, 1931, forwarded to the Freehold Trust Company, trustee, the sum of $818,075 a sum sufficient to redeem all the bonds then outstanding, together with interest and premium. Among the bonds called for redemption were six bonds of $1,000 each, owned by the complainants, five of which are held by Fannie W. Woodruff and one by Emma S.L. Burkick, guardian of Robert Duncan Langworthy, a minor.
The trustee, on receipt of the money, deposited the $818,075 in the Asbury Park and Ocean Grove Bank in the account which it maintained in said bank entitled, "Freehold Trust Co., Trust Account."
December 24th, 1931, the commissioner of banking and insurance took possession of the Asbury Park and Ocean Grove Bank by virtue of the power vested in him by statute, and on January 4th, 1932, the commissioner of banking and insurance took possession of the Freehold Trust Company, which, however, on or about June 30th, 1932, was reorganized and its assets taken over and liabilities assumed by the Freehold Trust Company.
The bill charges that the deposit by the Freehold Trust Company of the redemption money in the Asbury Park and Ocean Grove Bank was improperly and illegally made, and prays that the fund be decreed to be a trust fund for complainants' benefit; the defendant restrained from co-mingling the fund, and a decree for payment by defendant of the sum *Page 407 
found to be due them. In accepting the trust the defendant sought to limit its liability. Article 8, section 4, subdivision E of the indenture provides: "The trustee shall not be answerable for any act, default, neglect or misconduct of any of its agents or employes, nor in any way answerable or accountable, except for bad faith."
"It is clear, both from principal and authority, that the liability imposed on and accepted by a trustee may be limited by the terms of the instrument creating the trust. If there is such a clause of limitation the rule for measuring the trustee's liability is to be sought in that clause properly construed. In construing such clause, the meaning to be attributed to it should be consistent with the purpose and object of the trust, and a strict rule of construction should be applied as against the claim of restriction. But if, when so construed, a limitation on the liability of the trustee was clearly intended, the trustee is entitled to the benefit of it." Tuttle v. Gilmore,36 N.J. Eq. 617.
An immunity clause will not be construed as intended to exempt a trustee from liability if he transcends his powers as defined by the trust agreement. His engagement is to exercise the powers, and only the power conferred upon him, and the appropriate office and purpose of an immunity clause forming part of the trust agreement in which the duties of the trustee are clearly defined, is to limit his responsibility in matters of judgment and discretion in the execution of those defined powers. Conover v.Guarantee Trust Co., 88 N.J. Eq. 450.
Article 3, section 8 of the trust indenture with reference to the redemption of the bonds provides: "Such redemption shall be provided for and made by depositing with the Freehold Trust Company, trustee, for the redemption thereof, * * * such sum as may be sufficient to pay the principal, together with the then accrued and unpaid interest and a premium of five per cent. (5%) upon the bonds so called for redemption." The trust indenture is silent as to any duty imposed upon the trustee with respect to the fund so received.
The contention of the complainant is that the trustee did *Page 408 
not exercise ordinary diligence and care when it deposited this large sum of money in the Asbury Park and Ocean Grove Bank. The uncontradicted testimony is that at the time of the deposit the Asbury Park and Ocean Grove Bank was the largest and strongest bank in Monmouth county, and that the failure of the bank was occasioned by a "run" which started on or about December 22d, because of the closing of the Seacoast Trust Company and seven other banks in Monmouth county within a short period prior.
I think the liability of the trustee was limited by the terms of the instrument creating the trust. There is no claim, and indeed none could be made, that the trustee, when it made the deposit, transcended any of the powers defined by the agreement or conferred upon it, and the immunity clause therefore will be construed to limit its responsibility in matters of judgment and discretion committed to it in the execution of the trust imposed, so far as caring for the fund in question when received was concerned.
A trustee is not an insurer. The measure of care and diligence required of a trustee is such as would be pursued by a man of ordinary prudence and skill in the management of his own estate.
"The general doctrine, as stated by Judge Story, in the second volume of his Equity Jurisprudence, Section 1269, is, that a trustee is to keep the trust property as a prudent man keeps his own. `Therefore,' he says, `if he should deposit the money with a banker in good credit, * * * and the banker or the drawee of the bill should become bankrupt, he would not be responsible.'" Cox
v. Roome, 38 N.J. Eq. 259.
The Asbury Park and Ocean Grove Bank, at the time of the deposit, was "in good credit." It had capital, surplus and undivided profits of $2,000,000, and total deposits of $10, 000,000. The failure of the bank was occasioned by circumstances over which it had no control.
The bill of complaint will be dismissed. *Page 409