THE PEOPLE'S NATIONAL BANK AND TRUST COMPANY OF PEMBERTON, NEW JERSEY, appellant,

*v.*

HELEN H. BICHLER, respondent.

[Submitted February term, 1934. Decided April 12th, 1934.]

*Mr. George B. Evans,* for the appellant.

*Mr. Howard Ewart,* for the respondent.

The opinion of the court was delivered by

LLOYD, J.

This appeal brings before this court the propriety of certain surcharges against the bank appellant as administrator of the estate of Jacob William Bichler. Bichler died intestate February 15th, 1929, without issue but leaving a widow, Helen H. Bichler, as the sole beneficiary of his estate. The widow renounced the right to administer and at her request the bank was appointed administrator on March 4th, 1929. An inventory of the assets of the estate was filed on December 7th, 1929, and this inventory showed assets of $60,325.35. No account was filed until late in 1931—Mrs. Bichler having petitioned the court to that end. To the account a number of exceptions were filed, many of which were sustained by the master to whom the account was referred, by the orphans court, and later on review again sustained in the prerogative court, resulting in surcharges to the amount of $7,769.62. The administrator appeals contending that these surcharges were unjustified.

The major portion of the exceptions to the account are based upon the failure to make sale of securities as of October 1st, 1929, which date was adopted by the master, by the orphans court and by the ordinary. The securities were

nearly all investments made by the decedent in his lifetime, as to which a different degree of responsibility attaches than to investments (or use of trust funds in an affirmative way) by the trustee. See *Comp. Stat. p. 2271.*

The testimony adduced indicated that there were numerous conversations between the trust officer of the bank and Mrs. Bichler during the period between the grant of letters and the presentation of her petition for an accounting. There is no evidence that during the period named there was any objection on her part to the retention of securities left by the decedent or of purchases made subsequently. There is some evidence that she, by silence at least, approved the retention of securities and some of the purchases.

We think it was clear error to surcharge the administrator with losses on securities which came to it as an asset of the estate because of failure to sell before October 1st, 1929; either securities in possession or which came to it on the payment of a purchase price which the deceased had agreed to pay in his lifetime, even though those assets might not have been of a legal investment character.

It was incumbent on the trustee to administer the estate with reasonable diligence. To this end the law (*Comp. Stat. p. 3852 ¶ 114*) recognizes one year as a reasonable time for accounting. It appears from the evidence that there was various claims against the estate which had to be adjusted. There were also claims held by the estate which had to be collected. If the year were fairly required the administrator must either retain the assets or convert them into money with resulting loss of income. When it chose the former course it was in no sense violating its trust. It was arbitrary in the extreme to set the date named as the period at which responsibility should attach. It was likewise illegal and unjust. The administrator had been appointed less than seven months before that date and surcharges based on failure to dispose of securities held by the deceased in his lifetime within that period were justified neither in law nor sound reason.

In the light of history it would of course have been wiser

to have sold the securities within a short time after the appointment of the administrator, but wisdom after the event is not the test of responsibiliy, and the law holds trustees, whether administrator, executor, guardian or others standing in fiduciary relation, only to the exercise of reasonable diligence and ordinary prudence and caution. *Heisler* v. *Sharp's Ex'rs, 44 N. J. Eq. 167; In re Corn Exchange National Bank, 109 N. J. Eq. 169; In re Leonard, 107 N. J. Eq. 235.*

The master in his report in this case quoting from an earlier decision says: "It was common knowledge not only amongst bankers and trust companies, but the general public as well, that the stock market condition at the time of the testator's death was an unhealthy one, that values were very much inflated, and that a crash was almost sure to occur." *In re Chamberlain, 9 N. J. Mis. R. 809.* We have no such prescience, and if there was such knowledge in the minds of the financial community and the general public it is strange that the crash did not occur long before through the precipitate sale of overvalued securities. Our observation fails to discover any such state of the public mind and none such was chargeable to the administrator in this case. The crash of October, 1929, would appear to have been no more discernible than the even greater fall in values which took place subsequently. Contrast the views of another jurist in a like situation in *In re Pettigrew, 115 N. J. Eq. 401.*

The evidence does disclose that the administrator in the years 1930 and 1931 was not diligently attentive to its duties, and if loss after a reasonable time within which to dispose of the securities occurred by reason of such neglect, it is fairly surchargeable. But such surcharge could only arise after such reasonable time. The arbitrary date of October 1st, 1929, was certainly not the period at which to determine this question.

The principal item on which the surcharge rests is the retention by the administrator of one hundred and two shares of Associated Gas and Electric Company stock appraised in the inventory at $58.25 a share and having a market value on October 1st, 1929, of sixty-seven and seven-eighths, on

June 1st, 1930, of thirty-eight, and February 21st, 1930, of twenty-one. Just what its value was immediately following the disastrous break in the stock market late in October, 1929, does not appear but upon this item the accountant was surcharged in the amount of $4,768.50. We have already indicated that no charge of neglect could be laid to the door of the administrator because of failure to dispose of this class of securities prior to the break in October. There came at that time a precipitous decline in the value of all securities, good and bad. It is common knowledge, as expressed by Vice-Chancellor Lewis in *In re Pettigrew, supra,* that at that time "financial geniuses were literally pouring their fortunes into the coffers of the stock market so that they might be able to hold, rather than sacrifice, their securities. * * * In not then selling they [executors] merely did as other hundreds of thousands of ordinarily prudent and cautious persons. To charge them for so acting would be to exact of them the exercise of a far greater degree of care, caution and farsightedness than would have been exercised by the ordinarily average prudent and cautious person under similar circumstances."

As was said in the case of *Beam* v. *Paterson Safe Deposit and Trust Co., 82 N. J. Eq. 518,* this leaves open the question of the exercise by the accountant of a reasonable discretion in holding on to the securities after they have begun to decline. In the months following the severe break there were other periods of breaks and recoveries. The administrator of course could not hold on indefinitely. Is it to be held responsible for nearly the entire appraised value of these shares for the failure to sell during the intervening months between the first market collapse and the filing of the account in 1931? In the breast of the holder of securities, when prices are depressed there is always the hope of betterment and men hold on to them when in the light of past events it might have been the part of wisdom to dispose of them.

From the amount of the surcharge it would seem as though the value at the time of accounting must have been very

small. Not having sold when the securities were high, for which no neglect could be attached, the administrator evidently regarded it as unjust to the estate to sell them when they were at low ebb. It is true that it appears from the testimony that little, if any, effort was made to ascertain the intrinsic worth, but if such attention had been given we must consider what it would have discovered, and upon the disclosure we must determine what the administrator should have done. There is nothing to indicate that such efforts would have ascertained anything beyond that which might be indicated in the market values. On the whole we are not prepared to say that the administrator did that which ordinary prudence and caution would forbid. This being true the surcharge on this specific stock was not justified, and what is here said applies to other securities standing in like position.

The appellant complains that counsel fees and commissions were disallowed upon the account in the orphans court and also by the vice-ordinary on appeal. It seems, however, that this phase of the exceptions was not argued in the latter court and was therefore presumably abandoned. It cannot be argued here.

The decree is reversed and the case remitted for further proceedings in accordance with the views expressed in this opinion.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Heher, Perskie, Van Buskirk, Kays, Hetfield, Dear, Wells, Dill, JJ. 15.