MAYTE C. ROSS, complainant-appellant,

*v.*

SAVINGS INVESTMENT AND TRUST COMPANY, defendant-respondent.

[Argued October term, 1936. Decided January 26th, 1938.]

*Messrs. Furst & Furst (Mr. George Furst,* of counsel), for the appellant.

*Mr. Arthur T. Vanderbilt (Mr. Lawrence A. Carton, Jr.,* of counsel), for the respondent.

HETFIELD, J.

The appeal in the present case is from a decree dismissing the bill of complaint which in effect alleges that the respondent, as trustee for appellant, purchased and retained certain securities contrary to and in violation of a trust agreement, and seeks to have the investments declared illegal and to compel the trustee to restore the trust fund.

It appears that the complainant received the sum of $300,000 representing the proceeds from certain insurance policies upon the life of her deceased husband, Henry G. Dechant, and after advising with the trust officer of the respondent bank, she decided to create a revocable trust with the funds so received. A trust agreement was accordingly executed on the 21st day of February, 1931, which named one William Berg as co-trustee with the respondent bank, and under the terms thereof the trustees were restricted to such investments as are prescribed for the investment of trust funds by law or judicial decision either of the State of New York or the State of New Jersey. In October, 1932, Mr. Berg resigned as trustee, and C. Chandler Ross, the present husband of the appellant, was named in his place and stead.

The appellant contended that on February 24th, 1931, the respondent invested $150,000 in non-legal securities, which consisted of a $75,000 guaranteed first mortgage certificate issued by the Lawyers Mortgage Company of New York, in a bond and mortgage covering property situated at No. 506 West One Hundred and Seventy-eighth street, New York City, and bearing interest at the rate of five per cent., and a $75,000 guaranteed first mortgage certificate issued by the New York Title and Mortgage Company, of New York City, known as Series F-1, bearing interest at the rate of five per cent., which was secured, both as to principal and interest, by a group of bonds and mortgages on deposit or thereafter to be deposited with the Bank of Manhattan Trust Company. The appellant charged that the respondent, when purchasing these certificates, failed to exercise the due care and caution required of trustees, by reason of the fact that it made no investigation, inspection or appraisal of the properties covered by the mortgages, and that it made the investments without the knowledge and consent of the co-trustee, Berg.

The learned vice-chancellor held that the certificate issued by the Lawyers Mortgage Company was a proper investment of trust funds under the New York statute which does not impose on the trustee any duty of inspection, appraisal or

examination of properties affected by the mortgages. He further concluded that the purchase of the certificate issued by the New York Title and Mortgage Company, Series F-1, was an investment of trust funds not authorized or permitted by the New York statute, and among other New York cases cited *In re Stupack, 278 N. Y. S. 403.* However, after the opinion of the court of chancery had been filed, the court of appeals of New York reversed the lower court in the *Stupack Case, 274 N. Y. 198,* holding that fiduciaries were reasonably warranted in believing that the New York statute describing lawful investments for trust funds intended to include securities of this character.

The dismissal of the bill was based upon the sole ground that the appellant had acquiesced and authorized the making of the investments which she now questions, and that being so, cannot complain even though same were illegal. The learned vice-chancellor, who saw the complainant and heard her testify, found as a fact that she was above the average in intelligence and business ability, and thoroughly understood and was fully informed as to the character and nature of the certificates she now complains of, and that both she and the co-trustee, Mr. Berg, acquiesced to the purchase of these securities and were content to have them retained in the trust fund. I think the record supports such a conclusion, as the proofs show that prior to the purchase of said securities, the complainant and co-trustee conferred on several occasions with the trust officer of the respondent bank and favored the purchase of same. The evidence indicates that the complainant from time to time, by letter and otherwise, directed the trust officer of the respondent bank to purchase for the trust fund non-legals consisting of stock, and she testified that whenever she gave the trust officer instructions to purchase securities, she expected her orders to be obeyed. The trust was a revocable one, and the complainant realized that if her instructions were not followed, she could terminate her relations with the bank at any time. The fact was undisputed that a complete list of the securities was sent by the respondent bank to the complainant on February 26th, 1931, shortly

after the investments had been made, and that on June 9th, 1931, a detailed description of each investment was forwarded to her, but she did not question the investments until February, 1933, after same had depreciated in value. The complainant testified that on one occasion the co-trustee, Ross, was in favor of selling the mortgage certificates, but that she opposed such action.

The general rule is that either concurrence in the act, or acquiescence without original concurrence, will release the trustee; and there are no circumstances in the present case that warrant an exception to this rule.

The decree under review should be affirmed; and I am instructed, by all members of the court who favored an affirmance, to say that they concur in the views herein expressed.

The court being equally divided, the decree was affirmed.

HEHER, J. (For modification.)

Upon the death of her husband—on February 9th, 1931—complainant received $300,000 in life insurance. She was then ill; and, while bedfast, opened negotiations with defendant bank for the investment of the fund. The result was the execution, on February 21st ensuing, of a trust agreement, whereby the bank and one Berg, a business associate of her husband, undertook to invest the moneys "in any security or securities belonging to any of the classes of investments prescribed for the investment of trust funds by law or judicial decision, either of the State of New York or of the State of New Jersey."

And so it was incumbent upon the trustees to exercise such care, skill, diligence and caution as a man of ordinary prudence would practice in like matters of his own. Every trustee is presumed to use in his own affairs of like kind such diligence as is commonly used by all prudent men. And if the trustee possesses greater skill than a man of ordinary prudence, he is under a duty to exercise such skill as he has. He is required to use reasonable judgment and discretion, so measured, in the selection of the securities. If he adheres to this rule, the trustee is not liable for mere errors of judg-

ment. *Gates* v. *Plainfield Trust Co., 121 N. J. Eq. 460; affirmed, 122 N. J. Eq. 366; Delafield* v. *Barret, 270 N. Y. 43; 200 N. E. Rep. 67; Bogert on Trusts and Trustees* § *541; A. L. I. Trusts* § *174.*

But the fact is that the service thus bargained for was not rendered. As stated, the trust agreement was executed on Saturday, the 21st. On the following day, complainant departed for Florida. Monday, the 23d, was a legal holiday. On the 24th, the first business day following the execution of the agreement, the defendant bank, acting without the authority or judgment of its co-trustee, Berg, by telephone, invested $75,000 in a mortgage participation certificate issued by the Lawyers Mortgage Company (to be hereinafter referred to as the "Lawyers Company"), covering one parcel of real estate in the City of New York, and a like sum in one of a series of such certificates, labelled F-1, issued by the New York Title and Mortgage Guaranty Company (to be referred to as the "New York Company"), secured by an assortment of bonds and mortgages covering realty in the city of New York and its environs, with power of substitution of securities vested in the mortgage company.

There was no inquiry respecting these underlying securities. A question then directed to the New York Company, if truthfully answered—and it is to be presumed that falsification would not have been indulged—would have elicited the facts that there had been default in the payment of interest on twenty of the one hundred and thirteen mortgages comprising the series, and in the payment of taxes on the lands covered by fifty-one of these mortgages—whereby the unpaid taxes became a paramount lien thereon—and that ten of the mortgages had been issued by Land Estates, Inc., and Wilton Holding Co., subsidiary companies who had taken title to lands purchased in foreclosure proceedings on mortgages held by the New York Company, and were not in fact yielding interest, although by charging the subsidiary companies with the "interest due as a receivable item"—so runs the testimony—the New York Company's books recorded the payment of all accrued interest thereon.

And it would also have been revealed, it is reasonably inferable, that most of the mortgages were not accompanied by a sworn appraisal, showing the appraised value of the property covered thereby to be "at least fifty per cent. greater than the principal sum so secured," as required by the underlying contract; and that some of the appraisals were on their face of questionable integrity. In many instances, for example, their validity in relation to the time of deposit of the securities—a "substantial" period of time intervened between the making of the appraisement and the subsequent placing of the security with the depository—was patently open to serious doubt. This requirement as to value was also the subject of a peremptory statutory command. See *In re Stupack, 274 N. Y. 198; 8 N. E. Rep. (2d) 485.* Yet there was no demand by the trustee herein for the appraisals or for information respecting the value of the mortgaged lands. Utter reliance upon the New York Company's guarantee was not a fulfillment of the duty resting on the trustee. It is an elemental duty of the fiduciary, in the investment of such funds in a mortgage security, to take all reasonable precautions to protect the *cestui que trust against inadequate security.* That is a reasonable prerequisite to the lending of trust funds on real estate security. *Bogert on Trusts and Trustees* § 674.

When considered in the light of the then existing circumstances, notably the collapse of the real estate market, with the consequent drastic decline in values, due to or an accompaniment of the current trade depression—sufficient of themselves to put the investor in mortgage securities on careful inquiry—the inference is irresistible that this investment was made primarily on the faith of the mortgage company's guarantee, without regard to the adequacy of the mortgage security.

Thus there was, it seems to me, a clear breach of an imperative duty arising out of the trust agreement. The New York statute classifying such mortgage participation securities as "legals" does not absolve the trustee from his primary obligation to the *cestui que trust* in the selection of the securities. That enactment was addressed to the character of the

investment and not to the quality of the particular security. In *Delafield* v. *Barret, supra,* the court of appeals of New York declared: "The fiduciary who invests in securities within the specified classes is not by the statutes freed from liability for resultant losses if he fails to exercise reasonable judgment and discretion in making the investment." The guarantee of the issuing mortgage company, standing alone, manifestly does not suffice to render such an investment a "legal" within the intendment of the New York statutes. Ample mortgage security is a basic requirement. That is the primary security; the guarantee is a mere incident constituting at most an added inducement. The applicable New York statute disables the fiduciary from investing in bonds and mortgages, or "in shares or parts of such bonds and mortgages," unless the real property covered thereby is "unincumbered" and "worth fifty per centum more than the amount loaned thereon." This also disposes of the trustee's claim that the arrearages of interest and taxes were not of vital consequence because of the mortgage company's obligation, in virtue of its guarantee, to liquidate them. The fact is that the arrearages had not been discharged, and, in respect of the taxes, they constituted a superior lien, and in this particular also the security did not rise to the statutory standard.

The question mooted in the *Slupack Case, supra,* was whether, due to the retention of an interest in the deposited bonds and mortgages by the New York Company, and the reservation of the power of substitution of securities, and kindred provisions, the interest acquired by the certificate holder was, "at most, an incomplete or conditional share in the bonds and mortgages," rather than "a share or part" thereof within the intendment of the amendment of the Decedent Estate law of New York effected by chapter 544 of the laws of 1918; and it was held that, while seemingly not within the letter of the statute, the guardian, by reason of "the generally accepted construction of the statute," resting "securely upon the opinion" of the attorney-general and "the administrative practice of the officer of the state charged with

the enforcement of the law" (the superintendent of insurance), "had ground to believe that the statute was intended to authorize the investment she made." So far as the opinion reveals, nothing else was decided.

"Due care," so used, is a relative term. While the standard is not variable, what constitutes adherence to it of necessity depends upon the special circumstances at the time the judgment is given. Changing business and economic conditions call for safeguards commensurate with the known hazards or those within the realm of reasonable prevision. *Bogert on Trusts and Trustees* § *541*.

And I find that the bank, notwithstanding its insistence to the contrary, ignored its co-trustee in making these investments. The prior conference with Berg related only to the character of the investment. He was given no voice in the execution of the plan to invest in securities of this nature; the bank acted alone in their selection. The contract called for joint action; and its failure in this respect constituted a breach of contractual duty. *Holcomb* v. *Coryell, 11 N. J. Eq. 476*.

Notwithstanding the contrary view of my brethren recorded for affirmance, I am unable to find any basis in the proofs for the conclusion of the learned vice-chancellor that complainant acquiesced in the purchase of the securities, and, in any event, thereafter ratified them. Such consent as she gave prior thereto related, as in the case of the co-trustee, to the kind of the investment and not to the excellence of the individual security. She did not direct these specific investments, nor consent to them; and it is elementary that the *cestui* is not to be considered as acquiescing in a breach of trust unless he knew all the facts and circumstances, and understood his legal rights. As with all other direct dealings between the trustee and his *cestui,* there must be a full and fair disclosure by the trustee of all the relevant facts and circumstances within his knowledge, and the *cestui* must be shown "to have acted freely, deliberately, and advisedly with the intention of confirming a transaction which he knew, or might or ought, with reasonable or proper diligence, to have

known, to be impeachable." *McAllister* v. *McAllister, 120 N. J. Eq. 407; affirmed, 121 N. J. Eq. 264, 265.* See, also, *Bogert on Trusts and Trustees* § *689.* The proof of this is required to be clear and convincing.

Here, complainant plainly relied upon the special skill and knowledge in such matters professed by the bank; and, when she finally learned the securities so casually purchased were of questionable value, she protested time and again. While the bank maintained that, after expression of her dissatisfaction, she withheld consent to a sale of the securities, the evidence is clear that she took this course at the suggestion, if not the insistence, of the bank's trust officer, who pointed out that a sale then would entail a substantial loss, and urged it was the part of prudence to await the early maturity of the series, when the mortgage company would certainly, in his opinion, fulfill its guarantee. At all events, she was not then fully advised of the facts and circumstances. And she did not pursue a course of conduct which in anywise prejudiced the bank. The latter, maintaining the securities were sound, vigorously counseled against a sale, and it is clear that in these counsels it ignored the unfavorable factors. While its good faith in so doing is not questioned, the *cestui* was entitled to a full disclosure of the facts.

These conditions did not obtain in the case of the Lawyers Company's certificate. That was in the sum of $75,000, and the supporting security was a mortgage of $82,500, covering a single property. The value of the security is the sole ground of attack; and I find it to be without substance. As pointed out by counsel for the bank, its trust officer made inquiry respecting "the location, rents, appraised value and character of the land and building" comprising the mortgage security—a course concededly not pursued in relation to the New York Company's certificate. While complainant's experts appraised the property at less than the amount of the mortgage, it is fairly inferable that they were influenced, consciously or otherwise, by the substantially different standards prevailing when the appraisement was made. The experiences of the intervening period had materially affected

the measure of prudence obtaining in the early years of the financial debacle. Viewing the matter in retrospect, it is difficult to apply the *criteria* appropriate at the time the investment was made. Then, too, the Lawyers Company acted on appraisements made at the time—which was not the case with many of the mortgages supporting the certificate issued by the New York Company.

In my view, the bank trustee is answerable for the loss consequent upon its breach of duty in relation to the purchase of the certificate issued by the New York Company; and I vote to modify the decree accordingly.

The judges voting for modification join in this opinion.

*For affirmance*—LLOYD, CASE, BODINE, HETFIELD, WELLS, WOLFSKEIL, JJ. 6.

*For modification*—THE CHIEF-JUSTICE, PARKER, HEHER, PERSKIE, DEAR, RAFFERTY, JJ. 6.