A brief prefatory statement of the acknowledged facts will amply divulge the subject-matter of the present appeal. One Elias Cook died testate in 1879. His widow, Anna T. Cook, whom he appointed executrix and testamentary trustee, died in January, 1916. On July 7th, 1916, the Mercer County Orphans Court appointed Trenton Safe Deposit and Trust Company (now Trenton Trust Company, the respondent) to assume the future administration of the testamentary trust as substituted trustee. Among the assets transmitted to the respondent as such fiduciary were two mortgages dated February 21st, 1883, which had been executed and delivered to Anna T. Cook, the former executrix and trustee, by Samuel R. Jacques, covering premises known as No. 231 Academy Street in the City of Trenton, New Jersey. One of the mortgages secured an indebtedness of $2,000 payable on February 21st, 1886, and the other an obligation of $5,000 payable on February 21st, 1893. The mortgagor also covenanted to pay interest on the mortgage debts at the rate of six per centum
semi-annually, and also the taxes levied and assessed against the mortgaged premises. Thus associated, the two mortgages have been regarded as a single investment.
The respondent retained the mortgages until by foreclosure, instituted on December 28th, 1935, it acquired title to the mortgaged premises on March 25th, 1936. It is stipulated that on March 2d 1937, the premises were sold by the City of Trenton for delinquent taxes. In October, 1937, the respondent decided to convey the premises for a purchase price of $5,650, and in order to consummate the sale the respondent expended $5,391.06 to redeem the property from the existing tax liens. In addition it had made disbursements for foreclosure expenses, incidental title examinations, recording fees, and broker's commissions. The consequence was not only the loss of the entire investment, but indeed an *Page 125 
additional charge of $475.60 against the corpus of the trust estate in order to satisfy fully the expenses incurred in the fruitless transaction.
The respondent submitted its first and final account on November 6th, 1940, in which it prayed allowance for the losses so sustained. Exceptions relative to the management of the investment were interposed. The appellants are dissatisfied with the pertinent decrees of the Orphans Court; hence this appeal.
An examination of the evidence induces me promptly to concur in the conviction of the learned judge of the Orphans Court that the respondent was remiss in its duty in the supervision of the investment here implicated.
Much, perhaps sufficient for judicial purposes, has been written concerning the care, skill, and caution to be exercised by a trustee. The standard of conduct exacted by the law must always have a very definite relationship to the nature of the undertaking and to the conditions and circumstances amid which the fiduciary was situated. Three major factors normally demand consideration: the nature of the undertaking, the standard of conduct to be exercised in that undertaking, and the conditions and circumstances then existing as well as those reasonably to be foreseen. A standard of conduct results from comparisons. It implies a level of custom and general practice in the particular pursuit.
It was once judicially announced that a trustee should not be required to manage trust property with the same care with which he would manage his own. Lord Northington in Harden v.Parsons (1758), 1 Eden. 145, 148. The imperfection of that rule soon became conspicuous.
Our approved standard of care seems to be affiliated with the presumption that every trustee exercises in his own affairs of like kind such diligence as is commonly used by all prudent men. There are assuredly numerous individuals who, in quest of the prompt acquisition of riches, hopefully venture their own resources in precarious business and financial adventures. A trustee cannot adopt the bent of mind of a speculator. The functions of a trustee are in character conservative rather than speculative. In contrast, it has not been *Page 126 
deemed judicious that a trustee should incur the responsibility of an insurer of the absolute preservation of the trust property and be thus constrained to invest the trust estate in a manner subject to the least possible risk. 2 Scott on Trusts 1203, 1204
§ 227.3.
The prescribed measure of duty requires a trustee to exercise (expressed in the composite verbiage of the cases) that degree of care and caution, skill, sagacity, and judgment, industry and diligence, circumspection and foresight, that an ordinary discreet and prudent person would employ in like matters of his own. In re Griggs, 125 N.J. Eq. 73; 4 Atl. Rep. 2d 59;affirmed, sub nom. In re Paterson National Bank, 127 N.J. Eq. 362; 12 Atl. Rep. 2d 705; Gates v. Plainfield Trust Co.,121 N.J. Eq. 460; 191 Atl. Rep. 304; affirmed, 122 N.J. Eq. 366;194 Atl. Rep. 65; In re Ward, 121 N.J. Eq. 555; 192 Atl. Rep. 68;affirmed, 121 N.J. Eq. 606; 191 Atl. Rep. 772; Wild v. Brown,120 N.J. Eq. 31; 183 Atl. Rep. 899; In re Cross, 117 N.J. Eq. 429; 176 Atl. Rep. 101; Harris v. Guarantee Trust Co., 115 N.J. Eq. 602; 172 Atl. Rep. 209; affirmed, 117 N.J. Eq. 423;176 Atl. Rep. 146; Peoples National Bank, c., of Pemberton v. Bichler,115 N.J. Eq. 617; 172 Atl. Rep. 207; In re Pettigrew, 115 N.J. Eq. 401; 171 Atl. Rep. 152; affirmed, 116 N.J. Eq. 566;174 Atl. Rep. 478; Woodruff v. Freehold Trust Co., 112 N.J. Eq. 405;164 Atl. Rep. 411; affirmed, 116 N.J. Eq. 597; 174 Atl. Rep. 707; Inre Corn Exchange National Bank, 109 N.J. Eq. 169;156 Atl. Rep. 455; In re Leonard, 107 N.J. Eq. 235; 151 Atl. Rep. 729; Smith
v. Jones, 89 N.J. Eq. 502; 104 Atl. Rep. 380; Beam v. PatersonSafe Deposit and Trust Co., 83 N.J. Eq. 628; 92 Atl. Rep. 351;Heisler v. Sharp, 44 N.J. Eq. 167; 14 Atl. Rep. 624; affirmed,45 N.J. Eq. 367; 19 Atl. Rep. 621.
There is a circumstance in the present case that induces me to suggest that the conduct of a trustee should be conformable to that of an ordinary prudent person in the particular undertaking or pursuit in which he is engaged. Here, the mortgagor was evidently aged and in indigent and impecunious circumstances. The trustee permitted him to *Page 127 
occupy the mortgaged premises over a span of years without paying the accruing interest or taxes, and passively condoned his delinquencies until his death at the age of eighty-nine years. It is readily conceivable that even an ordinarily prudent mortgagee, motivated by emotions of sympathy and compassion, might in a like matter of his own thus defer the collection of the mortgage debt notwithstanding some eventual loss. Certainly, a trustee is not to be reproached for some forebearance which the conditions reasonably warrant, but when the tolerance becomes an analogue of pecuniary charity and beneficence, it then overrides the amplitude of the powers of a trustee. The generosity is then no longer that of the trustee to bestow; it must then come voluntarily from the cestui que trust.
A trustee is in charge of the property of another. He has assumed an obligation to carefully store it. The duty is not owed to himself but to those having the beneficial ownership. I am therefore convinced that the nature of his undertaking to act for others is a practicable factor of significance in determining the responsibility of a fiduciary.
The circumstances accompanying and surrounding the conduct of the trustee are also factual elements of variable importance. Just as I propose that a degree of care which is regarded as reasonable in one undertaking might not be so regarded in an undertaking of a different nature, so also must the degree of requisite care be determined in the light of the ominous experiences of the past and the prevailing conditions amid which the trustee was called upon to discharge his duties.
Then there is also the fundamental rule, having present pertinence, that unless compliance is impossible or illegal, or unless there has been such a change of conditions that compliance would defeat or substantially impair the accomplishment of the purposes of the trust, the trustee must be obedient to the terms and provisions of the underlying trust instrument. In reBuckelew, 128 N.J. Eq. 81; 13 Atl. Rep. 2d 855; affirmed,129 N.J. Eq. 383; 19 Atl. Rep. 2d 779; In re Shaw, 122 N.J. Eq. 536; 195 Atl. Rep. 525; Brewster v. Demarest, 48 N.J. Eq. 559; 23 Atl. *Page 128 Rep. 271. The authority of the present respondent to invest in bonds and "first mortgages" was qualified by the restrictive provision, "said mortgages not to be for more than one-half the value of said lands and improvements." The special testamentary directions of the testator concerning the manner of investment are expressly accorded superiority over the application of our statutes, otherwise controlling. See R.S. 3:16-1; N.J.S.A.3:16-1.
The insistence that a trustee should not be expected to be infallible and omniscient is of course to be immediately acknowledged. Mere errors of conscientious judgment do not of themselves establish a failure of duty. In re Griggs, supra;Ross v. Savings Investment and Trust Co., 123 N.J. Eq. 288;197 Atl. Rep. 59 (Heher, J.), and authorities there cited; In reCross, supra; Harris v. Guarantee Trust Co., supra; PeoplesNational Bank of Pemberton v. Bichler, supra; In re Pettigrew,supra.
The general obligation of the trustee to exercise due care encompasses the performance of numerous administrative tasks, among which is that of promptly examining the trust property tendered to him to ascertain not only its quantity, but also its quality. A mere observance of the superficial features of the investment may not suffice. Its suitability in general should be reasonably investigated. The trustee must then resolve whether in view of the provisions of the trust instrument, the pertinent statutes, and the characteristics of the assets, the property can lawfully and with reasonable prudence be retained. In re Ward,supra; In re Buckelew, supra; Wild v. Brown, supra; In reGriggs, supra; In re Paterson National Bank, supra; Brewster v.Demarest, supra; Peoples National Bank of Pemberton v.Bichler. supra; Beam v. Paterson Safe Deposit and Trust Co.,supra.
It is therefore with that somewhat general background of duty in view that the propriety of the respondent's conduct must be considered.
The evidence gathered from the state of case reveals that from 1913 to 1916 the respondent acted as the agent of the former trustee, and upon assuming the appointment as substituted trustee the respondent was aware that the mortgaged *Page 129 
premises had been appraised by its committee at $12,000. Subsequent appraisals were indefinite and deficient. 3 Bogert,Trusts and Trustees 2058 § 685. Indeed, it is not evident that the investment was at any time during the twenty succeeding years conformable to the specification of the trust instrument, except perhaps during a fugitive interval in the year 1925. That propitious opportunity to liquidate the investment eluded the respondent.
Additionally, it is confessed that except for a period of three months in 1916, the mortgagor was incessantly delinquent in the payment of interest or taxes or both. As early as 1918 the interest and tax defaults exceeded $900; in 1920, they ascended above $1,100. In October, 1937, the tax lien with interest and costs had enlarged to $5,391.06. The security of the investment apparently depreciated periodically with at least the same progression as the delinquencies accumulated. The overhanging risk must have been perceptible.
There were occasions when there were cash balances in the trust available for the payment of taxes and certainly the cost of foreclosure. Here again a type of representative generosity is manifested. Notwithstanding its duty to conserve, loans were made by the respondent from the cash balances to one of the beneficiaries of the trust without the consent of the others.
A few words about the mortgagor are not inappropriate. The vice-president and executive trust officer of the respondent discovered that the mortgagor customarily ignored all written requests for the payment of interest or taxes. Having dispatched a letter or bill to him without avail, it was necessary to visit him at his home where "he would dig around and open it [the bill] and show you that it had not been opened." A financial statement was never solicited from him. He ultimately failed in business, died insolvent, and the respondent did not burden his estate with any claim.
In 1936 the respondent resolved to have the house carefully examined. It then discovered that the trust estate had retained a mortgage on a property which in its residential appointments had at long last become obsolete. Its tin bathtub *Page 130 
encased in wood, its furnace built of brick with a tin cylinder dome inside, its gas fixtures to supply the only means of illumination, afford a revelatory glimpse of its outmoded fashion.
In the present case the responsibility of the respondent for the loss of the investment arises from proof of that form of inattention appropriately called supine negligence. The liability here does not ensue merely from the retention of an investment which in the measure of its underlying security was unauthorized by the will of the testator. Nor does it flow from some alleged imperfection of honest judgment and foresight exercised under the pressure of an emergency. Throughout the course of many years the delinquencies and indifference of the mortgagor, the destined obsolescence of the building, the continuous existence of tax and interest defaults, exhibited the inexpediency of retaining the investment and forewarned the respondent of eventual loss.
The omission of duty is as evident to me as it was to the judge of the Orphans Court, but I confess inability to concur in his admeasurement of the loss sustained by the beneficiaries of the trust. Assuredly the respondent must be surcharged for the material loss proximately occasioned by its dereliction. The surcharge should be fairly and adequately compensatory.
The evidence discloses that there was at least a reasonable period during which the mortgage debts could have been collected in full, and in the light of all the unfavorable characteristics of the investment, ordinary prudence and diligence recommended such action. The respondent should accordingly be required to reimburse the trust for the loss of principal amounting to $7,000. Compensation should also envelop the consequential loss of income, and accordingly the respondent is chargeable with interest. The rate, however, should be one that is equitable in the evident conditions and circumstances of the particular case. The beneficiaries are entitled to such method of calculation as shall most closely approximate the amount which would in reasonable probability have been obtained by a proper fulfillment of the duties of the trustee. Mindful that the trust fortunately received, though *Page 131 
belatedly, a liberal return of six per cent. until April 1st, 1930, and that there is neither charge nor proof of bad faith on the part of the respondent, the surcharge will include simple interest at three and one-half per centum on the principal fund of $7,000 from April 1st, 1930. See John Agnew Co. v. Board ofEducation, 83 N.J. Eq. 49; 89 Atl. Rep. 1046; affirmed, 83 N.J. Eq. 336; 90 Atl. Rep. 1135; Backes v. Crane, 87 N.J. Eq. 229;100 Atl. Rep. 900; Melosh v. Melosh, 125 N.J. Eq. 486;6 Atl. Rep. 2d 472; In re Winter, 133 N.J. Eq. 245, 254;31 Atl. Rep. 2d 769.
Moreover, the tardiness of the respondent ultimately burdened the trust estate with the items of expense totaling $475.60. That expenditure should be restored to the trust with interest at the same rate. *Page 132